# 14-1868-cv

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

————— ▶▶◀◀ —————

FINDTHEBEST.COM, INC.,

*Plaintiff-Appellant,*

*v.*

LUMEN VIEW TECHNOLOGY LLC, DALTON SENTRY, LLC, DECISIONSORTER, LLC,
THE HILLCREST GROUP, INC., EILEEN C. SHAPIRO, STEVEN J. MINTZ,
DOES 1 THROUGH 50,

*Defendants-Appellees.*

—————————

*On Appeal from the United States District Court
for the Southern District of New York (New York City)*

## BRIEF FOR DEFENDANTS-APPELLEES
## DALTON SENTRY, LLC, DECISIONSORTER, LLC,
## THE HILLCREST GROUP, INC., EILEEN C. SHAPIRO
## AND STEVEN J. MINTZ

Mark P. Goodman
Carl Riehl
DEBEVOISE & PLIMPTON LLP
*Attorneys for Defendants-Appellees*
  *DecisionSorter, LLC, The Hillcrest Group,*
  *Inc., Eileen C. Shapiro and Steven J. Mintz*
919 Third Avenue
New York, New York 10022
212-909-6000

David A. Berger
Richard L. Crisona
ALLEGAERT BERGER & VOGEL LLP
*Attorneys for Defendant-Appellee*
  *Dalton Sentry, LLC*
111 Broadway, 20th Floor
New York, New York 10006
212-571-0550

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Appellee-Defendant The Hillcrest Group, Inc., hereby states that it has no parent corporation, and there is no publicly held corporation that owns 10% or more of its stock.

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

By: /s/Mark P. Goodman
      Mark P. Goodman
      Carl Riehl
      919 Third Avenue
      New York, New York  10022
      Tel.:  212-909-6000

*Attorneys for DecisionSorter, LLC, The Hillcrest Group, Inc., Eileen C. Shapiro and Steven J. Mintz*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ........................................................................ 1

ISSUES PRESENTED ........................................................................ 3

STATEMENT OF THE CASE ........................................................................ 4

SUMMARY OF ARGUMENT ........................................................................ 8

ARGUMENT ........................................................................ 9

I.    THE DISTRICT COURT PROPERLY DISMISSED FTB'S
      RICO CLAIMS UNDER 18 U.S.C. § 1962(C) BECAUSE FTB
      FAILED TO ALLEGE COGNIZABLE RICO PREDICATE
      ACTS ........................................................................ 9

      A.    Standard of Review ........................................................................ 9

      B.    The Allegations of Extortion Fail as Predicate Acts ........................... 10

            1.    Litigation-Related Conduct and Threats of Such
                  Conduct Do Not Constitute Extortion Under the
                  Hobbs Act ........................................................................ 10

            2.    FTB's Allegations of Extortion Under California
                  Law  in the Court Below Are Unavailing ................................. 17

            3.    The Supposed Absence of *Noerr-Pennington*
                  Immunity Does Not Make Lumen View's
                  Litigation-Related Conduct Extortion Under the
                  Hobbs Act ........................................................................ 18

            4.    FTB's Contention That Defendants' Extortion
                  "Scheme" Went Beyond the Mere Filing of
                  Frivolous Lawsuits Does Not Save Its RICO Claim ............... 26

      C.    The Allegations of Mail and Wire Fraud Fail as Predicate
            Acts ........................................................................ 30

Page

    1.    The Allegations of Mail and Wire Fraud Fail as Predicate Acts Because FTB Does Not Allege Reliance ................................................................................ 30

    2.    Litigation Conduct Cannot Support Claims of Mail and Wire Fraud ....................................................................... 35

D.    The Allegations of Travel Act Violations Fail as Predicate Acts ............................................................................ 44

II.    THE DISTRICT COURT PROPERLY DISMISSED FTB'S RICO CONSPIRACY CLAIM BECAUSE THE UNDERLYING RICO CLAIMS ARE INSUFFICIENT AS A MATTER OF LAW ............................................................................ 44

CONCLUSION ..................................................................................... 46

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                    <u>Page(s)</u>

*Agema v. City of Allegan*,
2014 WL 249374 (W.D. Mich. Jan. 22, 2014) ......................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................... 9-10

*Atl. Recording Corp. v. Raleigh*,
2008 WL 3890387 (E.D. Mo. Aug. 18, 2008) ......................................................29

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................10

*Bixler v. Foster*,
596 F.3d 751 (10th Cir. 2010) ............................................................................11

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) ...................................................................................... 33, 34

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 508 (1972) .............................................................................................22

*Calabrese v. CSC Holdings, Inc.*,
2009 WL 425879 (E.D.N.Y. Feb. 19, 2009) ........................................................34

*Calabrese v. CSC Holdings, Inc.*,
283 F. Supp. 2d 797 (E.D.N.Y. 2003) .................................................................25

*Campbell v. PMI Food Equip. Grp., Inc.*,
509 F.3d 776 (6th Cir. 2007) ..............................................................................18

*Chevron Corp. v. Donziger*,
974 F. Supp. 2d 362 (S.D.N.Y. 2014) ..................................................................22

*Cintas Corp. v. Unite Here*,
601 F. Supp. 2d 571 (S.D.N.Y. 2009) ..................................................................44

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*,
758 F. Supp. 2d 153 (E.D.N.Y. 2010) *aff'd*, 443 Fed. App'x 582 (2d
Cir. 2011) .................................................................................................... *passim*

iii

Page(s)

*D'Orange v. Feely*,
877 F. Supp. 152 (S.D.N.Y. 1995) .........................................................................36

*Daddona v. Gaudio*,
156 F. Supp. 2d 153 (D. Conn. 2000)......................................................... 16, 37, 40

*Deck v. Engineered Laminates*,
349 F.3d 1253 (10th Cir. 2003) .................................................................... *passim*

*Di Giambattisa v. McGovern*,
974 F.2d 1329, 1992 WL 214444 (1st Cir. 1992)......................................... 12, 24

*Dias v. Bogins*,
134 F.3d 361, 1998 WL 13089 (1st Cir.), *cert. denied*,
523 U.S. 1103 (1998)................................................................................... 12, 20, 24

*DirecTV, Inc. v. Lewis*,
2005 WL 1006030 (W.D.N.Y. Apr. 29, 2005)......................................... 27, 29, 36

*E. Sav. Bank, FSB v. Papageorge*,
 --- F. Supp. 2d ---, 2014 WL 910357 (D.D.C. Mar. 10, 2014).............................14

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004).................................................................................44

*First Pac. Bancorp, Inc. v. Bro*,
847 F.2d 542 (9th Cir. 1988) .................................................................................11

*Gabovitch v. Shear*,
70 F.3d 1252, 1995 WL 697319 (1st Cir. 1995), *cert. denied*,
516 U.S. 1175 (1996)........................................................................ 12, 24, 28, 39

*G-I Holdings, Inc. v. Baron & Budd*,
179 F. Supp. 2d 233 (S.D.N.Y. 2001) .............................................................. 26, 27

*Gonzalez-Morales v. Hernandez-Arencibia*,
221 F.3d 45 (1st Cir. 2000)...................................................................................12

*Hall Am. Ctr. Assocs. Ltd. P'ship v. Dick*,
726 F. Supp. 1083 (E.D. Mich. 1989)....................................................................25

*Heights Comm. Congress v. Smythe, Cramer Co.*,
862 F. Supp. 204 (N.D. Ohio 1994)......................................................................29

iv

Page(s)

*I.S. Joseph Co., Inc. v. J. Lauritzen A/S*,
751 F.2d 265 (8th Cir. 1984) ................................................................ 12, 20, 21

*In re Buspirone Patent Antitrust Litig.*,
185 F. Supp. 2d 363 (S.D.N.Y. 2002) ....................................................23

*In re Innovatio IP Ventures, LLC Patent Litig.*,
921 F. Supp. 2d 903 (N.D. Ill. 2013) ......................................................18

*Jaghory v. New York State Dep't of Educ.*,
131 F.3d 326 (2d Cir. 1997)......................................................................9

*Kashelkar v. Rubin & Rothman*,
97 F. Supp. 2d 383 (S.D.N.Y. 2000) ............................................... 36, 44

*Kearney v. Foley & Lardner, LLP*,
590 F.3d 638 (9th Cir. 2009) ........................................................... 22, 25

*Knipe v. Skinner*,
999 F.2d 708 (2d Cir. 1993)......................................................................17

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*,
431 F.3d 353 (9th Cir. 2005) ............................................................ 42, 43

*Lumen View Technology LLC v. FindTheBest.com, Inc.*,
13 Civ. 3599 (DLC) ...............................................................................2, 5

*Luther v. Am. Nat. Bank of Minn.*,
2012 WL 5471123 (D. Minn. Oct. 11, 2012) ........................................36

*McMurtry v. Brasfield*,
654 F. Supp. 1222 (E.D. Va. 1987) .......................................................38

*Morin v. Trupin*,
711 F. Supp. 97 (S.D.N.Y. 1989)...........................................................38

*Morrow v. Blessing*,
2004 WL 2223311 (E.D. Pa. Sept. 20, 2004) ................................... 40, 41

*Nakahara v. Bal*,
1998 WL 35123 (S.D.N.Y. Jan. 30, 1998) ........................................ 16, 40

Page(s)

*Nat'l Group for Commc'ns and Computers Ltd. v. Lucent Techs. Inc.*,
420 F. Supp. 2d 253 (S.D.N.Y. 2006) ............................................................. 44-45

*Nichols v. Mahoney*,
608 F. Supp. 2d 526 (S.D.N.Y. 2009) ...................................................15

*Nolan v. Galaxy Scientific Corp.*,
269 F. Supp. 2d 635 (E.D. Pa. 2003) ...................................................36

*Old Time Enters., Inc. v. Int. Coffee Corp.*,
1989 WL 98850 (E.D. La. Aug. 17, 1989), *aff'd*, 908 F.2d 970
(5th Cir. 1990).........................................................................37

*Ozbakir v. Scotti*,
764 F. Supp. 2d 556 (W.D.N.Y. 2011)...................................................34

*Paul S. Mullin & Assocs., Inc. v. Bassett*,
632 F. Supp. 532 (D. Del. 1986)................................................... 38, 40

*Philadelphia Reserve Supply Co. v. Norwalk Assoc., Inc.*,
1992 WL 210590 (E.D. Pa. Aug. 25, 1992) ..........................................27

*Primetime 24 Joint Venture v. Nat. Broad. Co., Inc.*,
219 F.3d 92 (2d Cir. 2000).............................................................23

*Raney v. Allstate Ins. Co.*,
370 F.3d 1086 (11th Cir. 2004) .......................................................11

*Sergeants Benevolent Ass'n Health & Welfare Fund v.*
*Sanofi-Aventis U.S. LLP*,
2012 WL 4336218 (E.D.N.Y. Sept. 17, 2012) ......................................34

*Snyder v. U.S. Equities Corp.*,
2014 WL 317189 (W.D.N.Y. Jan. 28, 2014)........................................ 15, 39, 40

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006) ..................................................... 21, 25, 32, 43

*Speight v. Benedict*,
2007 WL 951492 (N.D.N.Y. Mar. 28, 2007) .......................................36

Page(s)

*Spiegel v. Cont'l Ill. Nat. Bank*,
609 F. Supp. 1083 (N.D. Ill. 1985), *aff'd*, 790 F.2d 638 (7th Cir.),
*cert denied*, 479 U.S. 987 (1986) ........................................................... 37, 40

*State v. Rendelman*,
404 Md. 500 (Md. 2008) ....................................................................... 25

*United States v. Boffa*,
688 F.2d 919 (3d Cir. 1982), *cert. denied*, 460 U.S. 1022,
103 S. Ct. 1272, 75 L.Ed.2d 494 (1983) ........................................... 37, 38

*United States v. Clemente*,
640 F.2d 1069 (2d Cir. 1981) ................................................................ 12

*United States v. Eisen*,
974 F.2d 246 (2d Cir. 1992) ............................................................. 40, 41

*United States v. Enmons*,
410 U.S. 396 (1973) ............................................................................... 12

*United States v. Lee*,
427 F.3d 881 (11th Cir. 2005) ............................................................... 41

*United States v. Marbella*,
73 F.3d 1508 (9th Cir. 1996) ................................................................. 42

*United States v. Pendergraft*,
297 F.3d 1198 (11th Cir. 2002) ..................................................... *passim*

*United States v. Sturm*,
870 F.2d 769 (1st Cir. 1989) ............................................................. 23, 24

*United States v. Tobin*,
155 F.3d 636 (3d Cir. 1998) .............................................................. 24, 25

*Vemco, Inc. v. Camardella*,
23 F.3d 129 (6th Cir.), *cert. denied*, 513 U.S. 1017 (1994) ....... 11, 21, 25

*von Bulow v. von Bulow*,
657 F. Supp. 1134 (S.D.N.Y. 1987) ....................................................... 16

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
382 U.S. 172 (1965) ............................................................................... 22

Page(s)

<u>Other Authorities</u>

18 U.S.C. § 1951 .................................................................... 4, 10, 13

18 U.S.C. § 1951(a) ...................................................................11

18 U.S.C. § 1951(b)(2) ...............................................................11

18 U.S.C. § 1952 .................................................................... 4, 7, 44

18 U.S.C. § 1952(b) ...................................................................44

18 U.S.C. § 1962(c) ................................................................ *passim*

18 U.S.C. § 1962(d) ................................................................ *passim*

18 U.S.C. § 1341 .......................................................................4

18 U.S.C. § 1343 .......................................................................4

18 U.S.C. § 1961 .......................................................................1

18 U.S.C. § 1961(5) ..................................................................30

18 U.S.C. § 1962(c) ................................................................ *passim*

18 U.S.C. § 1962(d) ................................................................ *passim*

28 U.S.C. § 1367 ....................................................................7, 8

35 U.S.C. § 101 ........................................................................5

35 U.S.C. § 285 ........................................................................5

Cal. Bus. & Prof. Code § 17200 .....................................................6

Cal. Penal Code § 518 ...............................................................17

Fed. R. Civ. P. 12(b)(6) ...........................................................1, 9

## PRELIMINARY STATEMENT

Appellees-Defendants DecisionSorter, LLC, The Hillcrest Group, Inc., Dalton Sentry, LLC, Eileen C. Shapiro and Steven J. Mintz respectfully submit this brief in opposition to the appeal of Appellant-Plaintiff FindTheBest.com, Inc. ("FTB") from United States District Judge Denise Cote's Opinion and Order dated May 19, 2014 dismissing with prejudice FTB's First Amended Complaint (the "Complaint") under Federal Rule of Civil Procedure 12(b)(6).[1] FTB's Complaint, as did its initial complaint, sought to criminalize Lumen View's litigation activity undertaken to enforce duly issued patent rights. Judge Cote properly dismissed the Complaint for failing to plausibly allege any predicate acts under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.* ("RICO").

On November 29, 2011, the United States Patent and Trademark Office issued U.S. Patent No. 8,069,073, entitled "System and Method for Facilitating Bilateral and Multilateral Decision-Making" (the "'073 Patent"), to appellees Eileen C. Shapiro and Steven J. Mintz (the "Inventors"), who ultimately assigned it to appellee Dalton Sentry, LLC.  As a duly issued patent, the '073

---

[1] There was one additional defendant in the court below, Lumen View Technology LLC.  All of the defendants in the court below are collectively referred to herein as "Defendants," and where necessary to distinguish among defendants, Lumen View Technology LLC will be referred to as "Lumen View."

Patent was presumed valid, and conferred on its owner the express statutory rights

to exclude others from making, using, selling or offering to sell the claimed

invention in the United States, and to seek compensation of at least a reasonable

royalty from those so making, using, selling or offering to sell the patented

invention without consent (*i.e.*, without license).[2]

   FTB alleged in its Complaint that the Inventors, as the supposed

masterminds of a scheme to enforce through litigation these statutorily granted

rights in the '073 Patent, are guilty of racketeering under RICO – a statute typically

reserved for pursuing organized crime operatives and drug dealers – as well as

liable under various state law claims.  In FTB's conception, the Inventors' time and

expense in securing the '073 Patent and the legal rights that accompanied that

patent are irrelevant.  Under FTB's assertion, the Inventors' attempt to protect their

rights in the '073 Patent from infringement from those who would use their

invention without compensation amounts to a RICO enterprise involving a

continuous pattern of serious felonious conduct, including extortion under the

Hobbs Act, mail and wire fraud, and violations of the Travel Act.

---

[2] The District Court, in the related patent infringement litigation that Lumen View filed against FTB, *Lumen View Technology LLC v. FindTheBest.com, Inc.*, 13 Civ. 3599 (DLC) (the "Patent Infringement Action"), invalidated the '073 Patent as claiming non-statutory subject matter.  Until the '073 Patent was invalidated, it enjoyed a strong presumption of validity, and anyone seeking to enforce the patent was entitled to rely on that presumption.

Although written in purple prose, the Complaint essentially alleged that Defendants own the '073 Patent, that Lumen View has sued twenty or more defendants alleging infringement of the '073 Patent, and that many of those defendants have chosen to take a license to the '073 Patent rather than to contest the infringement allegations.  In order to make it seem as if Lumen View has in fact asserted a series of frivolous patent lawsuits, FTB, in the Complaint, offered its own construction of the claims of the '073 Patent that is at odds with the plain language of the claims, and that has never been adopted by any court.  Using the straw man of its wrongly construed claims, FTB then argued that the defendants in those actions obviously do not infringe the '073 Patent.

As the District Court correctly held, this is not a RICO case.  The Complaint's stringing together of all the appropriate RICO buzzwords does not change that fact.  Lumen View's litigation-related activity is not, as a matter of federal statutory law, extortion under the Hobbs Act, nor mail or wire fraud.  The Complaint simply failed to state any claim upon which relief could be granted, and was correctly dismissed.

## ISSUES PRESENTED

1.    Whether the District Court properly dismissed FTB's claims under 18 U.S.C. §§ 1962(c) and (d) upon finding that Lumen View's conduct in prosecuting the patent infringement litigations (even, *arguendo*, baseless, bad faith

litigation conduct falling outside *Noerr-Pennington* immunity) cannot constitute extortion under the Hobbs Act, 18 U.S.C. § 1951.

2.    Whether the District Court properly dismissed FTB's claims under 18 U.S.C. §§ 1962(c) and (d) upon finding that Lumen View's conduct in prosecuting patent infringement litigations (even, *arguendo*, baseless, bad faith litigation conduct falling outside *Noerr-Pennington* immunity) cannot constitute mail or wire fraud under 18 U.S.C. §§ 1341 and 1343.

3.    Whether the District Court properly dismissed FTB's claims under 18 U.S.C. §§ 1962(c) and (d) upon finding that Lumen View's  conduct in prosecuting patent infringement litigations (even, *arguendo*, baseless, bad faith litigation conduct falling outside *Noerr-Pennington* immunity) cannot constitute a violation of the Travel Act, 18 U.S.C. § 1952.

## STATEMENT OF THE CASE

On May 29, 2013, Lumen View filed the Patent Infringement Action, which was assigned to Judge Cote.[3]  The complaint in the Patent Infringement Action asserted a single claim against FTB for direct infringement of the '073 Patent.  The complaint conformed to Form 18 under the Federal Rules of Civil

---

[3] The docket in the Patent Infringement Action does not reflect any involvement by any of the Defendants except Lumen View (although FTB served the other Defendants with subpoenas in that action).

Procedure for patent infringement complaints, and FTB did not challenge its sufficiency.

Instead, FTB filed its answer on July 8, 2013 denying the material allegations in the complaint, and asserting nine skeletal, boilerplate affirmative defenses. FTB did not counterclaim for a declaration of non-infringement or to invalidate the '073 Patent. FTB later moved for judgment on the pleadings to invalidate the '073 Patent on the ground that it does not claim patentable subject matter under 35 U.S.C. § 101. On November 22, 2013, the District Court issued an Opinion and Order invalidating the '073 Patent, and dismissed the Patent Infringement Action.[4]

FTB filed the original complaint in this action on September 16, 2013. In addition to naming Lumen View (as the plaintiff in the Patent Infringement Action), the complaint named as defendants the Inventors, DecisionSorter, LLC, The Hillcrest Group, Inc., and Dalton Sentry, LLC. The original complaint alleged that Defendants formed an "association together for the common purpose of

---

[4] Lumen View filed a Notice of Appeal of the Court's Order [13 Civ. 3599, Dkt. 58], and is pursuing its appeal in the Federal Circuit. Despite the appeal, FTB filed a motion seeking a finding that the case is exceptional under 35 U.S.C. § 285, and for recovery of attorneys' fees in defending the Patent Infringement Action [*Id.*, Dkt. 59]. In a May 30, 2014 decision, the District Court awarded reasonable fees to FTB. [*Id.*, Dkt. 83]. The District Court's May 30 decision does not make any findings about any of the Defendants' conduct, except Lumen View's.

extorting money out of individuals and entities, including FTB" (R. 3-4 ¶ 1), but did not make essentially any specific allegations concerning litigation-related activity against any Defendants other than Lumen View (and in one instance, Eileen Shapiro). The allegations against Lumen View relate almost entirely to acts taken by its counsel. Indeed, with the exception of a single alleged telephone call between Defendant (and inventor) Eileen Shapiro and FTB's CEO (R. 18 ¶ 59), all of the alleged litigation-related conduct at issue consisted of filings in court, and contact and communication between Lumen View and FTB that was had by Lumen View's counsel and FTB or its counsel.

The linchpin of FTB's theory of the case in this action is that the Patent Infringement Action (and the patent infringement actions filed by Lumen View against approximately twenty other defendants) were shams that were undertaken with virtually no pre-suit investigation. Based on its broad, conclusory allegations of conspiracy and criminal conduct, the original complaint asserted six claims for relief, two federal statutory claims and four state law claims: (1) a RICO violation under 18 U.S.C. § 1962(c) based on an alleged pattern of extortion and mail and wire fraud; (2) conspiracy to violate RICO under 18 U.S.C. § 1962(d); (3) extortion under state law; (4) abuse of process; (5) civil conspiracy; and (6) a violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.* The state law claims were asserted under the Court's supplemental jurisdiction, 28 U.S.C.

6

§ 1367, and supposedly under diversity jurisdiction (R. 120 ¶ 26), but the complaint failed to allege the citizenship of all the parties.

Defendants moved to dismiss the original complaint on October 31, 2013, arguing that all of FTB's claims were barred by the *Noerr-Pennington* doctrine, and that the complaint failed to state any claim for relief under RICO or any of the asserted state law claims. Conceding the correctness of Defendants' motions, FTB declined to oppose them and instead served its amended complaint on November 22, 2013. The Complaint asserted the same six claims for relief, although FTB added alleged violations of the Travel Act, 18 U.S.C. § 1952, as RICO predicate acts.

All Defendants moved to dismiss the Complaint, and the District Court issued its Opinion and Order dismissing the action on May 19, 2014. In dismissing the RICO claim asserted under § 1962(c) based on the Hobbs Act, the District Court properly ruled that "the instigation of meritless litigation cannot constitute extortion under the Hobbs Act." (R. 435). The District Court also correctly dismissed the § 1962(c) claim to the extent it is premised on wire and mail fraud, ruling both that "FTB has not plausibly pled reliance on the Defendants' alleged misrepresentations and . . . it has not shown that its injuries were caused proximately by the RICO predicate acts of mail and wire fraud," and that "courts have consistently refused to recognize as wire or mail fraud . . .

7

activities that rise to the level of malicious prosecution simply because the mail or wires were used." (R. 440, 442). Without the predicate acts of extortion and mail or wire fraud, the District Court further held that FTB's purported claims under the Travel Act, and RICO conspiracy under 18 U.S.C. § 1962(d) necessarily fail. (R. 442-43, 445). Upon the dismissal of all of the claims asserting federal question jurisdiction, the District Court properly declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367, and dismissed FTB's state law claims. (R. 445-46).

## SUMMARY OF ARGUMENT

The District Court applied settled law, and dismissed FTB's Complaint because it failed to plead predicate acts of extortion, mail and wire fraud, and violations of the Travel Act. The court recognized that – notwithstanding FTB's broad brush allegations that Defendants engaged in a far-reaching, multi-faceted extortionate scheme – the essence of FTB's RICO allegations was that Defendants, through counsel, engaged in bad faith litigation in order to obtain money to which FTB asserts they were not entitled. Relying on numerous Circuit Court and lower court cases that have held that litigation and litigation-related conduct do not constitute predicate RICO acts as a matter of law, the District Court properly concluded that the Complaint failed to state a claim for relief under RICO.

8

The District Court reached the correct result in dismissing the Complaint.  As shown below, even assuming *arguendo* that Lumen View's litigation-related conduct was a sham outside the scope of *Noerr-Pennington* immunity, the District Court properly ruled that:  (1) litigation-related conduct is not, as a matter of federal statutory law, extortion under the Hobbs Act or mail or wire fraud; (2) FTB did not plausibly plead that it relied on any of Defendants' supposedly fraudulent statements or that its damages were proximately caused by any such statements; (3) having failed to establish Hobbs Act or mail or wire fraud violations, FTB cannot rely on the Travel Act as a RICO predicate act; and (4) having failed to establish a RICO violation under 18 U.S.C. § 1962(c), FTB's RICO conspiracy claim under 18 U.S.C. § 1962(d) likewise fails.

## ARGUMENT

## I.    THE DISTRICT COURT PROPERLY DISMISSED FTB'S RICO CLAIMS UNDER 18 U.S.C. § 1962(C) BECAUSE FTB FAILED TO ALLEGE COGNIZABLE RICO PREDICATE ACTS

### A.    Standard of Review

Defendants agree that this Court applies *de novo* review of the District Court's grant of a motion to dismiss pursuant to Rule 12(b)(6).  (FTB Brief at 13). *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* Analyzing a complaint is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

### B.    The Allegations of Extortion Fail as Predicate Acts

#### 1.    Litigation-Related Conduct and Threats of Such Conduct Do Not Constitute Extortion Under the Hobbs Act

FTB contends that Defendants violated the Hobbs Act, 18 U.S.C. § 1951, by "threaten[ing] frivolous lawsuits and criminal prosecution unless FTB paid substantial sums of money," and by "also us[ing] litigation and the discovery process without any interest in the outcome of the litigation, but with the intent to harm FTB's business and persuade FTB to pay a 'licensing fee' even though Defendants knew (or reasonably should have known) that FTB was not infringing the '073 Patent."  (R. 169 ¶¶ 91, 93).  Despite FTB's description of this conduct as a "systematic scheme" that went "well beyond the filing of frivolous lawsuits" (FTB's Brief at 21, 31), the gist of FTB's claim is that Defendants engaged in and threatened to engage in meritless litigation and conduct normally incident to

litigation (such as demand letters and document preservation letters) to extract from FTB and others money to which they were not entitled.[5]

      This conduct is simply not extortion.  The Hobbs Act imposes criminal sanctions on those who affect interstate commerce by extortion.  *See* 18 U.S.C. § 1951(a).  "Extortion" is defined under the Act as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).

      Although the Second Circuit has not addressed the question, every federal Circuit Court that has done so substantively has found that meritless litigation and related activities or threats of such conduct do not constitute extortion under the Hobbs Act as a matter of law.  *See Bixler v. Foster*, 596 F.3d 751, 758 (10th Cir. 2010); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087-88 (11th Cir. 2004); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1257-58 (10th Cir. 2003); *United States v. Pendergraft*, 297 F.3d 1198, 1205-08 (11th Cir. 2002); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir.), *cert. denied*, 513 U.S. 1017 (1994); *First Pac. Bancorp, Inc. v. Bro*, 847 F.2d 542, 547 (9th Cir. 1988);

---

[5] The supposed threat to charge FTB's CEO with a "hate crime" is the only part of Defendants' so-called scheme involving conduct that is not strictly related or incidental to the challenged litigation activity.

*I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 267-68 (8th Cir. 1984); *see also Dias v. Bogins*, 134 F.3d 361, 1998 WL 13089, at *1 (1st Cir.) (unpublished per curiam) ("[A]lthough a threat to sue, if groundless and made in bad faith, may be tortious under state law, it is not extortion under federal law."), *cert. denied*, 523 U.S. 1103 (1998); *Gabovitch v. Shear*, 70 F.3d 1252, 1995 WL 697319, at *2 (1st Cir. 1995) (unpublished per curiam) (same), *cert. denied*, 516 U.S. 1175 (1996); *Di Giambattisa v. McGovern*, 974 F.2d 1329, 1992 WL 214444, at *4 (1st Cir. 1992) (unpublished per curiam) (same).[6]

The rationale of these Circuit Court cases is straightforward, and fully supports the District Court's decision here.  Extortion under the Hobbs Act consists of the use of a "wrongful means to achieve a wrongful objective."  *United States v. Clemente*, 640 F.2d 1069, 1076 (2d Cir. 1981) (citing *United States v. Enmons*, 410 U.S. 396 (1973)).  Litigation, however, is not considered to be a "wrongful means" as these authorities construe the Hobbs Act.  As the Eleventh Circuit explained in *Pendergraft*:

---

[6] One First Circuit case, in the course of dismissing a RICO claim predicated, in part, on the filing of meritless litigation, suggests that litigation conduct *might* in "some instances" constitute extortion.  *Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 51-52 (1st Cir. 2000) ("we will assume that the filing of frivolous suits may constitute RICO extortion in some instances").  The court's statements about these "some instances" are, at best, *dicta*.

A threat to litigate, by itself, is not necessarily "wrongful" within the meaning of the Hobbs Act. After all, under our system, parties are encouraged to resort to courts for the redress of wrongs and the enforcement of rights…. History has taught us that, if people take the law into their own hands, an endless cycle of violence can erupt, and we therefore encourage people to take their problems to court. We trust the courts, and their time-tested procedures, to produce reliable results, separating validity from invalidity, honesty from dishonesty. While our process is sometimes expensive, and occasionally inaccurate, we have confidence in it. When a citizen avails himself of this process, his doing so is not inherently "wrongful."

297 F.3d at 1206-07 (citations omitted).

The Tenth Circuit, in *Deck*, applied similar reasoning in rejecting a claim of extortion based on bad faith litigation misconduct, and "join[ed] a multitude of other courts in holding that meritless litigation is not extortion under § 1951." 349 F.3d at 1258. The court explained:

Extortion is the antithesis of litigation as a means of resolving disputes. To promote social stability, we encourage resort to the courts rather than resort to force and violence…. Comfortable that the adjective "wrongful" in the extortion statute was not intended to apply to litigation, we hold that Plaintiff's allegations of bad-faith litigation do not state the predicate act of extortion.

*Id.*

In reaching the decisions in *Pendergraft* and *Deck* rejecting bad faith litigation-related conduct as extortion, the courts noted their concerns about the effect of transforming state law tort claims of abuse of process and malicious prosecution into federal crimes under RICO. In particular, the *Deck* court wrote that "recognizing abusive litigation as a form of extortion would subject almost

13

any unsuccessful lawsuit to a colorable extortion (and often a RICO) claim."  349

F.3d at 1258.  The *Pendergraft* court was even more explicit in its discussion of

these concerns, stating:

> [W]e are troubled by *any* use of this federal criminal statute to punish
> civil litigants.  Sanctions for filing lawsuits, such as malicious
> prosecution, lead to collateral disputes and a piling of litigation on
> litigation without end.  Allowing litigants to be charged with extortion
> would open yet another collateral way for litigants to attack one
> another.  The reality is that litigating parties often accuse each other of
> bad faith.  The prospect of such civil cases ending as criminal
> prosecutions gives us pause.

297 F.3d at 1207 (internal quotation omitted) (emphasis in original).

A number of District Courts in this Circuit and elsewhere that have

dismissed RICO claims predicated on allegations of bad faith litigation conduct

have expressed similar concerns.  *See*, *e.g.*, *E. Sav. Bank, FSB v. Papageorge*, ---

F. Supp. 2d ---, 2014 WL 910357, at *6 (D.D.C. Mar. 10, 2014) ("In the civil

context, recognizing litigation as a form of extortion would 'transform a state

common law action into a federal crime'[,] and 'subject almost any unsuccessful

litigant to a colorable extortion (and often a RICO) claim.'") (quoting *Pendergraft*,

297 F.3d at 1207-08; *Deck*, 349 F.3d at 1258); *Curtis & Assocs., P.C. v. Law

Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 173 (E.D.N.Y. 2010)

("Plaintiffs' interpretation of RICO is untenable and would result in the inundation

of federal courts with civil RICO actions that could potentially subsume all other

state and federal litigation in an endless cycle where any victorious litigant

14

immediately sues opponents for RICO violations."), *aff'd*, 443 Fed. App'x 582 (2d
Cir. 2011) (summary order); *see also id.* at 166-67 (noting the "almost inevitable
stigmatizing effect" of a RICO claim on those named as defendants."); *cf. Nichols
v. Mahoney*, 608 F. Supp. 2d 526, 536 (S.D.N.Y. 2009) ("A civil RICO lawsuit has
vast implications for the defendants because of the specter of treble damages and
the possibility of permanent reputational injury to defendants from the allegation
that they are 'racketeers.'").

Indeed, this concern over criminalizing litigation-related activities,
even bad faith conduct, is part of a broader principal that litigation and threats of
litigation are simply not actionable under federal criminal law, no matter how a
plaintiff may choose to label the predicate RICO acts in a complaint.  Thus, a
number of courts faced with RICO complaints which characterize the threat,
instigation, or continuation of abusive litigation tactics as criminal violations other
than extortion – such as obstruction of justice or mail and wire fraud – have held
that such allegations state, at best, causes of action in tort for abuse of process or
malicious prosecution, neither of which constitutes a predicate act under RICO.
*See*, *e.g.*, *Snyder v. U.S. Equities Corp.*, 2014 WL 317189, at *7-8, fn.8 (W.D.N.Y.
Jan. 28, 2014) (finding that plaintiff stated a malicious prosecution claim, but not a
RICO claim, where the "gravamen" of her complaint was that "the defendants
pursued fraudulent litigation, using fraudulent affidavits and filings, in an attempt

to obtain money or property to which they were not entitled."); *Daddona v. Gaudio*, 156 F. Supp. 2d 153, 162 (D. Conn. 2000) (finding allegations "at best amount to a vague abuse of process or malicious prosecution claim" where complaint listed a "variety of … 'predicate acts,' all of which involve the filing of complaints and other legal documents"); *Nakahara v. Bal*, 1998 WL 35123, at *6-7, *8 (S.D.N.Y. Jan. 30, 1998) (finding that plaintiffs' mail and wire fraud claims were at most "a potential yet still inchoate claim for malicious prosecution or abuse of process" where "the gravamen of [plaintiffs'] Complaint ... patently is directed at [the defendant's] filing of, or participation in, the various legal actions pending against [plaintiffs]"); *see also Curtis*, 758 F. Supp. 2d at 171-75; *von Bulow v. von Bulow*, 657 F. Supp. 1134, 1140-42 (S.D.N.Y. 1987).

FTB, to some extent in its Complaint, and to a much greater extent in its brief in this Court, tries to allege a grand criminal scheme in which Defendants' conduct went far beyond litigation-related activity. (R. 119 ¶¶ 21, 38; FTB's Brief at 2, 32-37, 40-42). A cursory review of the conduct alleged by FTB, however, shows, with one exception (the alleged threat concerning the "hate crime"), that it all concerns litigation activities or conduct incident to litigation. Such conduct, under abundant case law authority, simply does not amount to extortion (or any other federal crime). The District Court correctly dismissed FTB's RICO claims as failing to plausibly allege Hobbs Act violations.

16

2.     FTB's Allegations of Extortion Under California Law
in the Court Below Are Unavailing

In the District Court, FTB asserted that Defendants' conduct also amounted to extortion under California Penal Code §§ 518, *et seq.*  The District Court found that these allegations similarly fail as a RICO predicate act.  FTB does not challenge that decision in this Court (and it is too late for it to do so in its reply brief, s*ee Knipe v. Skinner*, 999 F.2d 708, 710-11 (2d Cir. 1993)).

In any event, the District Court correctly decided the issue.  Assuming *arguendo* that the California extortion law might be applicable here because FTB is located in California, the Complaint provides no basis for finding that California law would apply to any of the other allegedly extortionate patent infringement lawsuits initiated by Lumen View.  Since, as the District Court correctly held and as shown in this brief, all of FTB's claims of criminal conduct under federal law fail as predicate acts, FTB's RICO claim must likewise fail even if its claim of extortion under California law were adequately pled as to the single instance against FTB.  *See*, *e.g.*, *Papageorge*, 2014 WL 910357, at *5 (no "pattern of racketeering activity" where the plaintiff pleaded "a single scheme (to wrest control of the Property from the plaintiff); a single injury (the plaintiff's financial losses purportedly stemming from the litigation involving the Property); and a single victim (the plaintiff).")

17

At the most, FTB could belatedly try to revive its contention that Defendants' conduct constitutes extortion of it under California law.  Since the California law is inapplicable to the other allegedly extortionate patent infringement lawsuits brought by Lumen View, that contention is insufficient to support FTB's RICO claims here.

### 3. The Supposed Absence of *Noerr-Pennington* Immunity Does Not Make Lumen View's Litigation-Related Conduct Extortion Under the Hobbs Act

Defendants argued below that Lumen View's filing of patent infringement lawsuits to enforce the duly issued '073 Patent was constitutionally-protected activity under the *Noerr-Pennington* doctrine.[7]  The District Court, finding that the absence of any RICO predicate acts was sufficient to compel dismissal of FTB's Complaint, did not reach Defendants' *Noerr-Pennington* argument.  FTB now argues in this Court that Defendants' conduct is not immune under the *Noerr-Pennington* doctrine, and that somehow that lack of immunity

---

[7] The *Noerr-Pennington* doctrine protects from liability those who petition any department of the government, unless the petitioning is a sham.  *In re Innovatio IP Ventures, LLC Patent Litig.*, 921 F. Supp. 2d 903, 910 (N.D. Ill. 2013).  The doctrine's application in a given matter does not depend on the particular statute or common-law rule giving rise to the asserted cause of action, but rather on the nature of the petitioning activity at issue in the case.  *See Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 790 (6th Cir. 2007); *Agema v. City of Allegan*, 2014 WL 249374, at *9 (W.D. Mich. Jan. 22, 2014).

18

compels a finding that Defendants' conduct amounts to extortion (and mail and wire fraud).  (FTB's Brief at 14-20, 45-46).

In making this argument, FTB does not directly challenge the general rule that meritless litigation and threats of meritless litigation are not actionable under RICO.  Instead, FTB suggests that the rule does not apply where the litigation conduct at issue falls within the "sham litigation" exception to the *Noerr-Pennington* doctrine, *i.e.*, where the litigation was objectively baseless and brought in bad faith.  (*See* FTB's Brief at 14-17).  FTB's attempt to use *Noerr-Pennington* to supplant the well-settled statutory construction of extortion under the Hobbs Act is not supported in case law, and must be rejected.

In contending that *Noerr-Pennington* defines the scope of immunity for litigation-related conduct, and that sham litigation must therefore constitute a Hobbs Act violation, FTB misses the distinction between the *Noerr-Pennington* doctrine and the District Court's holding about the Hobbs Act.  As a matter of Constitutional principle, the *Noerr-Pennington* doctrine immunizes all non-sham litigation conduct from *any* cognizable *federal or state* cause of action.  The District Court's holding here (which expressly declines to reach Defendants' *Noerr-Pennington* argument below) is simply that as a matter of federal statutory law, the litigation-related conduct of the sort alleged in FTB's Complaint – even bad faith conduct – does not amount to wrongful conduct within the meaning of

19

the Hobbs Act. (R. 435-36). Thus, the District Court's holding forecloses relying on Defendants' alleged bad faith litigation-related conduct to support a RICO claim, but the holding does not by its terms foreclose any other state law cause of action that FTB might (vainly) try to assert – as would be the case if *Noerr-Pennington* immunity applied.

In fact, that is precisely the rationale of the cases discussed above rejecting litigation-related conduct as extortion under the Hobbs Act. Those cases specifically note that such conduct, even if done in bad faith, should not be criminalized under federal law, but should be actionable (if at all) under state law causes of action. *See*, *e.g.*, *Dias*, 1998 WL 13089, at *1 ("[A]lthough a threat to sue, if groundless and made in bad faith, may be tortious under state law, it is not extortion under federal law."); *Pendergraft*, 297 F.3d at 1207-08 ("[T]he cases rejecting extortion for threats to litigate arise in the civil RICO context when parties attempt to graft a RICO claim on their claims for malicious prosecution. In those cases, the courts express concern about transforming a state common-law action into a federal crime. We share this concern."); *I.S. Joseph Co.*, 751 F.2d at 267 (holding that "groundless," "bad faith" threats to sue "may be tortious under state law" but "declin[ing] to expand the federal extortion statute to make it a crime"); *see also* Part I.B.1, *supra*.

20

Unsurprisingly, in its brief on appeal, FTB fails to cite to a single court decision where litigation-related conduct falling within the *Noerr-Pennington* doctrine's sham exception compels a finding of a Hobbs Act extortion claim. The cases on which FTB does rely to try to support its argument are inapposite. For example, in *Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006), the court never even considered the question of whether sham litigation constitutes extortion under the Hobbs Act because the plaintiff did not argue that the litigation at issue was a sham. *See id.* at 941 ("Sosa has declined to invoke the sham exception, so that is off the table."). Instead, the court considered only the following, narrow question: "[W]hether, given the important goals of RICO, the statute proscribes the sending of prelitigation demand letters asserting legal claims that may be weak but do not rise to the level of shams." *Id.* at 939. The court answered the question in the negative, finding that threats to litigate claims that do not rise to the level of shams are not "wrongful" within the meaning of the Hobbs Act. *Id.* at 939-40. The court did not hold, however, that threats to litigate claims that do rise to the level of shams are wrongful under the Hobbs Act. The court instead declined to answer the question, while pointing out in a footnote that several Circuit Courts that have considered the issue have "refus[ed] to impose Hobbs Act liability even on baseless litigation." *Id.* at 940 fn.10 (citing *Pendergraft*, 297 F.2d at 1208; *I.S. Joseph Co.*, 751 F.2d at 267; *Vemco*, 23 F.3d at 134).

21

Judge Kaplan's recent decision in *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014), is no more helpful to FTB. Although the court determined that the conduct of the defendant in *Chevron* did not constitute protected activity under the *Noerr-Pennington* doctrine, the court accepted the numerous authorities that have held that bad faith litigation does not constitute extortion. In fact, the court, citing *Deck* and *Pendergraft*, expressly stated that it "assume[d] without deciding that even 'meritless litigation is not extortion' under the Hobbs Act."[8] 974 F. Supp. 2d at 580. Equally unhelpful to FTB's position is the Ninth Circuit's decision in *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638 (9th Cir. 2009). *Kearney* did not involve any claim of extortion under the Hobbs Act, and is therefore inapposite.[9]

---

[8] The court nonetheless concluded that the defendants in *Chevron* had committed extortion. Although FTB attempts to draw parallels between the allegations in its Complaint and the facts of *Chevron*, there is simply no comparison. As described in FTB's own brief in the District Court, the defendants in *Chevron* "execut[ed] a multi-faceted, extortionate scheme that included bringing frivolous litigation, intimidating[ ] Ecuadorian judges, fabricating evidence, making false statements to U.S. Courts, Congress, the SEC, and the media, and bringing false criminal charges." [13 Civ. 3599, Dkt. 66 at 12]. Plainly, the allegations of wrongful litigation-related conduct alleged by FTB do not even begin to approach the level of conduct at issue in *Chevron*.

[9] In addition to the authorities discussed above, FTB cites a handful of antitrust cases for the proposition that "numerous federal courts allow for civil liability based on 'sham litigation' and related conduct." (FTB's Brief at 16-17) (citing, *inter alia*, *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972);

Having failed to provide any case law or persuasive reasoning to support its position that the *Noerr-Pennington* doctrine's sham exception should be applied to permit claims of Hobbs Act extortion to be brought in the context of a RICO action, FTB attempts elsewhere in its brief to collect additional authorities to supposedly prove that – independent of the application of the *Noerr-Pennington* doctrine – bad faith litigation conduct may, in some circumstances, constitute extortion under the Hobbs Act.  Indeed, FTB wrongly asserts that "[t]he First Circuit, Third Circuit, and Ninth Circuits have found that 'sham litigation' or meritorious litigation pursued through wrongful means can constitute extortion under the Hobbs Act."  (FTB's Brief at 24).

FTB first cites to *United States v. Sturm*, 870 F.2d 769 (1st Cir. 1989), asserting that the case holds that a "threat of litigation to obtain property *could* amount to extortion if the party knowingly had no claim of right to that property." (FTB's Brief at 24) (emphasis added).  *Sturm*, however, does not support FTB's argument.  In fact, the portion of the opinion on which FTB relies consists entirely of a hypothetical posed by the court regarding parties to a contract threatening

---

*Primetime 24 Joint Venture v. Nat. Broad. Co., Inc.*, 219 F.3d 92 (2d Cir. 2000); *In re Buspirone Patent Antitrust Litig.*, 185 F. Supp. 2d 363 (S.D.N.Y. 2002).  As these cases do not involve RICO claims, they are irrelevant to the statutory construction of whether bad faith litigation-related conduct can be extortion under the Hobbs Act.

litigation.  *Sturm*, 870 F.2d at 774.  Moreover, the First Circuit has since squarely

held that "although a threat to sue, if groundless and made in bad faith, may be

tortious under state law, it is not extortion under federal law."  *Dias*, 1998 WL

13089, at *1 (unpublished per curiam); *see also Gabovitch*, 1995 WL 697319, at

*2 (same) (unpublished per curiam); *Di Giambattisa*, 1992 WL 214444, at *4

(same) (unpublished per curiam).

       FTB also wrongly relies on *United States v. Tobin*, 155 F.3d 636 (3d

Cir. 1998), a criminal extortion case where the defendant conducted "a protracted

campaign of telephone harassment" against her former business associates for the

purpose of enforcing an alleged oral contract that involved, among other things,

threats to file false sexual harassment charges, the use of "anti-Semitic slurs," and

threats of "physical violence," such as the defendant's threat to one of her former

associates that he "would wind up 'hanging from a [expletive deleted] tree.'"  155

F.3d at 638-39.  In a single line of the opinion, in the course of rejecting the

defendant's claim about the trial court's error concerning an unrelated jury

instruction, the Third Circuit noted that the defendant's threats to sue did not

concern the alleged oral contract that she was seeking to enforce, but instead

involved unrelated (and groundless) charges of sexual harassment.  *Id.* at 640.

Despite FTB's contrary assertion, this aside in the opinion cannot be interpreted as

constituting a holding by the Third Circuit that "sham litigation" constitutes

24

extortion under the Hobbs Act. (*See* FTB's Brief at 24). As the opinion makes abundantly clear, the defendant's extortion conviction was supported by myriad facts completely unrelated to her threat to initiate a lawsuit, not least of which was the defendant's threat to actually murder one of her former associates.[10]

      The final circuit opinions cited by FTB in support of its "sham" argument are *Sosa* and *Kearney*. (FTB's Brief at 26). As explained above, however, these cases do not support FTB's position.[11]

---

[10] To cite just a few additional examples, the defendant in *Tobin* left "vulgar and intimidating" voicemails for one of her former associates, stating "I have your [expletive deleted] for a year. I own you. I will do whatever I want with you;" she threatened to report to the IRS that another of her former associates "was not declaring income that he earned in his business of chauffeuring women who worked in 'go-go' bars;" and she made "innumerable telephone calls to [her former associate's] pager and home telephone, as well as to his parents, his girlfriend, and others." *Tobin*, 155 F.3d at 639-41.

[11] FTB also cites two District Court opinions (one of which is from outside this Circuit) to support its argument that bad faith litigation may constitute extortion. (*See* FTB's Brief at 27-30). These decisions, *Calabrese v. CSC Holdings, Inc.*, 283 F. Supp. 2d 797 (E.D.N.Y. 2003), and *Hall Am. Ctr. Assocs. Ltd. P'ship v. Dick*, 726 F. Supp. 1083 (E.D. Mich. 1989), are outlying cases that do not follow the majority view. And at least one court has suggested that *Hall* is no longer good law since it predates *Vemco*, where the Sixth Circuit held that a threat of litigation, even if made in bad faith, does not constitute extortion. *See State v. Rendelman*, 404 Md. 500, 520 fn.11 (Md. 2008) (citing *Vemco*, 23 F.3d 129).

    4.    FTB's Contention That Defendants' Extortion "Scheme"
          Went Beyond the Mere Filing of Frivolous Lawsuits Does
          <u>Not Save Its RICO Claim</u>

As set forth above, the vast weight of authority holds that threats and

the pursuit of meritless litigation, even in bad faith, do not constitute extortion

under the Hobbs Act.  Having failed to establish that the "sham litigation"

exception to the *Noerr-Pennington* doctrine somehow pre-empts this well-settled

rule, FTB nonetheless argues that the rule should not apply under the particular

circumstances of this case because Defendants' alleged conduct "went beyond the

mere filing of frivolous lawsuits."  (FTB's Brief at 31, 40-42).  FTB fails, however,

to identify any specific conduct that is not litigation-related or incidental to

litigation (other than the alleged "hate crime" extortion) which makes this case

different from the ones cited above holding that litigation-related activity does not

constitute Hobbs Act extortion.

      For example, FTB repeatedly asserts that Defendants threatened it

with "catastrophic" injury as a result of Lumen View's Patent Infringement Action

(FTB's Brief at 4, 40), but the case law is clear that even threats of "economically

ruinous litigation" do not constitute extortion.  *See G-I Holdings, Inc. v. Baron &*

*Budd*, 179 F. Supp. 2d 233, 259 (S.D.N.Y. 2001) ("Even accepting [plaintiff's]

allegations that the defendants threatened 'economically ruinous litigation' … and

that the threatened lawsuits lacked merit, [plaintiff] has not pleaded extortion[.]");

*DirecTV, Inc. v. Lewis*, 2005 WL 1006030, at *5 (W.D.N.Y. Apr. 29, 2005)

("Threats of litigation, even economically ruinous litigation, even unmeritorious

litigation, do not constitute extortion.") (citing *G-I Holdings*, 179 F. Supp. 2d at

259); *see also Philadelphia Reserve Supply Co. v. Norwalk Assoc., Inc.*, 1992 WL

210590, at *6 (E.D. Pa. Aug. 25, 1992) (threat of "financial ruin" through litigation

insufficient to state a RICO claim).

Likewise, FTB's conclusory allegation that Defendants "in some

cases" threatened to add their "target's" customers to their patent infringement

lawsuits and, in two specific actions, named the customers in the complaint (FTB's

Brief at 40; R. 154 ¶ 39(g)), does not take this case outside the ambit of the general

rule.  First, there is nothing inherently wrongful about such actions in the context

of patent litigation, since a customer who uses an allegedly infringing product may

likewise be liable for infringement and thus a proper party to an infringement

action.  More fundamentally, since litigation and threats of litigation are not

"wrongful" within the meaning of the Hobbs Act, FTB's allegation that

Defendants threatened or commenced litigation against individuals or entities in

addition to itself and the twenty other defendants in the alleged patent infringement

actions adds nothing to its extortion claim.  FTB cannot demonstrate that

Defendants' alleged extortion "scheme" went "beyond the mere filing of frivolous

27

lawsuits" (FTB's Brief at 31) by simply alleging that Defendants threatened and filed lawsuits against additional individuals or entities.

Nor does FTB's vague allegation that Lumen View's attorney filed a "false declaration[ ]" with the court in the Patent Infringement Action change the rejection of Hobbs Act extortion here.  (*See* FTB's Brief at 40; R. 165 ¶ 75).  In *Deck*, the plaintiff alleged that the defendants "gave or suborned perjured testimony during discovery."  349 F.3d at 1256.  In *Gabovitch*, the plaintiff alleged that the defendant "proffer[ed] false affidavits and testimony to the state court." 1995 WL 697319, at *2.  In *Pendergraft*, the defendant was alleged to have filed "false affidavits" in connection with a summary judgment motion in federal court. 297 F.3d at 1203.  Nevertheless, in each case, the Circuit Court held that the allegations were insufficient to establish extortion in light of the general rule that the pursuit of litigation, even in bad faith, is not actionable under the Hobbs Act. *See Deck*, 349 F.3d at 1257; *Gabovitch*, 1995 WL 697319, at *2; *Pendergraft*, 297 F.3d at 1205-08.  No different result should obtain here.

FTB likewise cannot succeed on its extortion claim by relying on the settlement demand letter claimed to have been sent to FTB by Lumen View's attorney.  (FTB's Brief at 34).  Settlement demand letters are a normal incident to civil litigation.   They are the primary means by which "threats of litigation" are delivered.  There is simply no question that they fall under the general rule that

28

litigation-related conduct and threats of such conduct are not extortion.[12]  *See*, *e.g.*, *Atl. Recording Corp. v. Raleigh*, 2008 WL 3890387, at *5 (E.D. Mo. Aug. 18, 2008) (finding that settlement demand letters were not extortionate because "a threat to file a lawsuit unless a settlement demand is accepted, regardless of whether the threat was made in good faith, is not a wrongful threat within the meaning of the extortion statutes"); *Lewis*, 2005 WL 1006030, at *5 (letter demanding settlement of $3,500 and accusing plaintiff of violating federal law did not constitute extortion because "[t]hreats of litigation … do not constitute extortion."); *Heights Comm. Congress v. Smythe, Cramer Co.*, 862 F. Supp. 204, 206-07 (N.D. Ohio 1994) (finding that "demands for settlement, coupled with a threat of litigation" do not constitute extortion).[13]

As the District Court recognized, the only allegation in the Complaint that conceivably could state a violation of the Hobbs Act is FTB's allegation that Lumen View's attorney threatened FTB's CEO with criminal charges for calling

---

[12] FTB's description of the letter – which is attached to FTB's Complaint (R. 202-07) – is grossly overwrought.  (*See* FTB's Brief at 34).  A brief review of the letter shows that it is the sort of letter that is normally incident to litigation.

[13] FTB's allegation that Defendants structured themselves as "shell entities" in order to frustrate FTB's defense and to insulate themselves from liability (*see* FTB's Brief at 40; R. 151-52 ¶ 38) also fails to support FTB's contention of a far-ranging scheme.  Since the litigation-related conduct itself does not constitute extortion, it is irrelevant how Defendants supposedly structured themselves to carry out that litigation.

Shapiro a "patent troll." But that allegation, even if sufficient to establish a single act of extortion, is plainly insufficient to demonstrate that Defendants engaged in a "pattern" of racketeering activity. *See* 18 U.S.C. § 1961(5) ("'pattern of racketeering activity' requires at least two acts of racketeering activity").[14]

## C.    The Allegations of Mail and Wire Fraud Fail as Predicate Acts

The Complaint, though seemingly detailed, makes only the most fleeting, conclusory reference to FTB's reliance on Defendants' supposed fraudulent misrepresentations underlying the mail fraud and wire fraud predicate acts. FTB also tries to conjure mail fraud and wire fraud from Lumen View's counsel's litigation activities. As the District Court correctly concluded, none of these allegations are sufficient to support predicate acts of mail fraud and wire fraud.

### 1.    The Allegations of Mail and Wire Fraud Fail as Predicate Acts Because FTB Does Not Allege Reliance

In dismissing the allegations of mail and wire fraud as RICO predicate acts, the District Court correctly ruled that "FTB has not plausibly pled reliance on the Defendants' alleged misrepresentations and . . . it has not shown that its injuries

---

[14] While FTB asserts in its brief that it has alleged that "similar threats were used by Defendants against other victims" (FTB's Brief at 40), the Complaint contains no such allegation. The Complaint makes vague references to "threats" of criminal prosecution (R. 115 ¶ 3, 171 ¶ 105, 176 ¶ 125, 177 ¶ 130), but describes only the alleged threat to FTB's CEO. (R. 163 ¶ 68).

were caused proximately by the RICO predicate acts of mail and wire fraud." (R. 440-42). In response, FTB wrongly argues that the "District Court, however, overlooked the specific allegations in FTB's [Complaint] demonstrating that it did in fact rely upon Defendants' misrepresentations and suffered harm by investigating and responding to those allegations." (FTB Brief at 46-47)

FTB does not dispute that only one paragraph in the entire 136-paragraph Complaint specifically addresses FTB's alleged reliance on defendants' supposed fraudulent statements. (R. 170 ¶ 99). This paragraph alleges in only the most conclusory fashion that the "Defendants' false and misleading statements were relied upon by FTB and have caused FTB substantial damages." (*Id.*). FTB does not offer any further elaboration on how it in fact relied on Defendants' supposed fraudulent statements, how it would have even been possible for FTB or any other third party to do so given the nature of the allegations of fraud, or how the type of damages it alleges were caused by the alleged misrepresentations rather than by the fact of Lumen View's filing of the Patent Infringement Action.

The specific "fraudulent" representations to FTB identified in the Complaint are Defendants' "false representations regarding the nature of the '073 Patent, their purported right to 'licensing fees,' their 'settlement demands,' their

false declaration and their threats of criminal prosecution."[15] (R. 170 ¶ 97). As noted, FTB does not identify a single action it took in supposed reliance on these alleged misrepresentations. It did not concede infringement; it did not take a license, it did not settle the patent infringement lawsuit, and it did nothing in response to the alleged threat of the hate crime prosecution. Instead, FTB successfully moved to invalidate the '073 Patent. And, of course, FTB filed this action against Defendants, claiming that that the conduct in the Patent Infringement Action amounts to serious criminal misconduct. FTB also does not identify any reliance by any third party on Defendants' supposed fraudulent statements, nor does it explain how any such third party could have relied on the statements.

　　　　FTB likewise fails to explain how the damages it alleges – which "include, but are not limited to, damage to FTB's reputation and goodwill, disruption to FTB's business, travel expenses, legal fees and costs in defending

---

[15] Supposed misrepresentations about the scope of the '073 Patent, and Defendants' right to licensing fees or a settlement payment because of FTB's infringement of the '073 Patent could not support charges of mail or wire fraud in any event. The '073 Patent is a publicly available document that was in fact annexed to the patent infringement complaint. [13 Civ. 3599, Dkt. 1]. FTB is as capable as Defendants of determining the scope of the patent or evaluating representations about its scope. FTB could also reach its own conclusion about whether its website infringes the '073 Patent, and thus can evaluate any request for a licensing fee or settlement. There can be no mail or wire fraud in such circumstances. *Sosa*, 437 F.3d at 941.

itself from Defendants' objectively baseless, improperly motivated, sham patent lawsuit and threats of criminal prosecution" – were proximately caused by Defendants' supposedly fraudulent statements.  (FTB's Brief at 47).  FTB makes no effort to establish proximate causation of these items of alleged damage (even assuming that they are all even cognizable damages in a RICO action), and the specific misrepresentations that FTB claims.  In fact, the damages that FTB specifies were caused, if at all, by the mere filing of the Patent Infringement Action, and not by any alleged misrepresentations.  Stated otherwise, FTB would have incurred precisely the same claimed damages from the filing of the Patent Infringement Action, even in the absence of any supposed fraudulent statements.

FTB's failure to have properly alleged reliance and proximate causation of its damages is, as the District Court found, fatal to its claim of mail and wire fraud.  In *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008), the United States Supreme Court examined the role of reliance in establishing a civil RICO claim predicated on acts of mail fraud – an analysis prompted by the plaintiffs' assertion that they had been injured as the result of reliance by third-parties on the defendants' fraudulent representations.  In that context, the Court rejected the "contention . . . that reliance by the plaintiff is an element of a civil RICO claim predicated on a violation of the mail fraud statute." *Id.* at 653.  The Court further explained, however, that a plaintiff asserting a civil

33

RICO claim continues to have the obligation to demonstrate both but-for and

proximate causation in order to show injury by reason of a RICO violation, and

that proof of reliance is almost always required to make such a showing:

> Of course, none of this is to say that a RICO plaintiff who alleges
> injury "by reason of" a pattern of mail fraud can prevail without
> showing that someone relied on the defendant's misrepresentations.
> In most cases, the plaintiff will not be able to establish even but-for
> causation if no one relied on the misrepresentation…. In addition, the
> complete absence of reliance may prevent the plaintiff from
> establishing proximate cause.

*Id.* at 658-59 (internal citation omitted); *see Sergeants Benevolent Ass'n Health &*

*Welfare Fund v. Sanofi-Aventis U.S. LLP*, 2012 WL 4336218, at *3 (E.D.N.Y.

Sept. 17, 2012) ("The Supreme Court has held that a plaintiff alleging a RICO

violation need not demonstrate first-person reliance to establish causation, but

proof of at least third-party reliance is required") (citing *Bridge*, 533 U.S. at 658);

*see also Calabrese v. CSC Holdings, Inc.*, 2009 WL 425879, at *12 (E.D.N.Y. Feb.

19, 2009) ("[W]here the only misrepresentations at issue are those that the

defendants made directly to each victim of the alleged scheme, a putative plaintiff

cannot establish that his injury was proximately caused by the RICO violation if he

cannot allege and prove that he personally relied on the misrepresentations.");

*Ozbakir v. Scotti*, 764 F. Supp. 2d 556, 574 fn.4 (W.D.N.Y. 2011).

   FTB's bare allegation of reliance without any demonstration of

proximate causation of its damages from the alleged mail and wire fraud – under

circumstances where it could not logically rely on Defendants' supposed

misrepresentations – is insufficient to state claims of mail and wire fraud.  The

District Court properly dismissed FTB's allegations of mail and wire fraud, and

FTB's allegations to the contrary in this Court are unavailing.

### 2. Litigation Conduct Cannot Support Claims of Mail and Wire Fraud

With the exceptions of an alleged telephone call between Inventor

Eileen Shapiro and FTB's CEO (R. 102 ¶ 67) and Defendants' responses to FTB's

subpoenas in the Patent Infringement Action (R. 154-55 ¶ 39(i)), *all* of the alleged

contact and communication between Lumen View and FTB was made by Lumen

View's counsel with FTB or its counsel.  Thus, all of the supposed fraudulent

misrepresentations on which FTB premises its mail fraud and wire fraud claims

(*i.e.* the allegedly "threatening" letter from counsel, the supposed threat of criminal

prosecution made by counsel, and the allegedly false declaration from counsel)

necessarily were made by Lumen View's counsel during the course of counsel's

representation of Lumen View in the Patent Infringement Action.  The District

Court correctly determined that such litigation activities cannot properly form the

basis for RICO predicate acts.

Separate from any defense of "immunity" under *Noerr-Pennington* or

any other doctrine, numerous authorities have held that alleged misrepresentations

by an attorney made in the course of representing a client in a pending legal matter

do not constitute predicate acts of mail or wire fraud for purposes of a RICO claim. *See Pendergraft*, 297 F.3d at 1208 ("A number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility.") (collecting cases); *Lewis*, 2005 WL 1006030, at *8 ("courts have held that serving litigation documents by mail cannot be a predicate act to establish mail fraud under the RICO statute") (collecting cases); *see*, *e.g.*, *Nolan v. Galaxy Scientific Corp.*, 269 F. Supp. 2d 635, 643 (E.D. Pa. 2003) (holding that "the mailing of letters denying liability and the filing of litigation documents known to contain falsehoods" by an attorney do not constitute mail fraud for purposes of RICO); *Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383, 392 (S.D.N.Y. 2000) ("soundly" rejecting "contention that" "legitimate conduct of attorneys representing their clients in pending litigation" can "constitute mail or wire fraud"), *aff'd*, 1 Fed. App'x 7 (2d Cir.), *cert. denied*, 534 U.S. 896 (2001); *D'Orange v. Feely*, 877 F. Supp. 152, 156 (S.D.N.Y. 1995) (dismissing RICO claim against attorneys who had allegedly sent fraudulent accountings through the mail and holding that the attorney's actions "cannot be considered predicate acts because they constitute legitimate conduct of attorneys acting on behalf of a client in the course of pending litigation"); *see also Luther v. Am. Nat. Bank of Minn.*, 2012 WL 5471123, at *6 (D. Minn. Oct. 11, 2012); *Curtis*, 758 F. Supp. 2d at 169-70; *Speight v. Benedict*, 2007 WL 951492, at *6 fn.2 (N.D.N.Y. Mar. 28, 2007);

36

*Daddona*, 156 F. Supp. 2d at 161-62; *Old Time Enters., Inc. v. Int. Coffee Corp.*, 1989 WL 98850, at *2 (E.D. La. Aug. 17, 1989), *aff'd*, 908 F.2d 970 (5th Cir. 1990) (table).

Applying this rule, courts in this Circuit and others have dismissed RICO claims predicated on allegations of mail and wire fraud substantially similar to those here. For example, in *Spiegel v. Cont'l Ill. Nat. Bank*, 609 F. Supp. 1083 (N.D. Ill. 1985), *aff'd*, 790 F.2d 638 (7th Cir.), *cert denied*, 479 U.S. 987 (1986), the plaintiff brought a RICO action against a bank, alleging predicate acts of mail fraud based upon two letters sent by the bank's counsel to plaintiff's attorney reciting the defendant's legal position about a fee dispute in a pending litigation. The court held that the letters, even if improper, did not constitute mail fraud because "Congress could not have intended that the mail fraud statute sweep up correspondence between attorneys, dealing at arm's length on behalf of their parties, concerning an issue in pending litigation[.]" *Id.* at 1089. The court explained:

> Fraudulent schemes which might arguably fall within the language of the mail fraud statute are still outside of its embrace if Congress did not intend that the statute apply to such schemes. *See United States v. Boffa*, 688 F.2d 919, 929 (3d Cir. 1982) (scheme to defraud employees of National Labor Relation Act not within mail fraud statute where Congress intended NLRA to be exclusive), *cert. denied*, 460 U.S. 1022[,] 103 S. Ct. 1272, 75 L.Ed.2d 494 (1983). Subjecting the letters in issue to the mail fraud statute would chill an attorney's efforts and duty to represent his or her client in the course of pending litigation. It also would, as it did here, give birth to collateral suits.

> Where, as here, the court in the first, pending case can fully protect the rights of the parties from abuse or unethical conduct, we see no reason to torture the limits of the mail fraud statute to allow such collateral suits.  We do not think Congress intended such a result where alternate remedies exist.

*Id*.

In *Paul S. Mullin & Assocs., Inc. v. Bassett*, 632 F. Supp. 532 (D. Del. 1986), the controllers of a financial planning company brought a RICO claim premised on allegations that the defendants had converted the plaintiffs' business and usurped its clients.  Among the alleged acts of fraud was a letter by the defendants' attorneys to a prospective purchaser of the plaintiffs' business, which stated the defendants' position that certain files in the plaintiffs' possession were the defendants' property and must be returned.  The Court rejected the plaintiffs' argument that the letter constituted a RICO predicate crime, stating:

> The Court finds absurd plaintiffs' apparent suggestion that a lawyer's act in posting a letter which states a client's legal position in a dispute can constitute mail fraud.  If such were the situation, every dispute in which the parties' counsel exchanged letters could give rise to RICO litigation.  Such activity simply is not fraudulent.

632 F. Supp. at 540; *see also Morin v. Trupin*, 711 F. Supp. 97, 105-06 (S.D.N.Y. 1989) (letter by attorney demanding payment on notes and threatening litigation did not constitute the RICO predicate act of mail fraud because "legitimate acts of attorneys on behalf of clients cannot form the basis of a RICO claim"); *McMurtry v. Brasfield*, 654 F. Supp. 1222, 1225-26 (E.D. Va. 1987) (letters and an affidavit

38

mailed in a custody dispute did not constitute mail fraud because "Congress did not intend the mail fraud statute to sweep so broadly with such detrimental effects on attorney representation and the orderly administration of justice.").

Recently, in *Snyder v. U.S. Equities Corp.*, 2014 WL 317189 (W.D.N.Y. Jan. 28, 2014), the District Court for the Western District of New York dismissed a RICO claim predicated on mail and wire fraud allegations strikingly similar to those asserted by FTB.  The plaintiff in *Snyder* alleged that a collection agency, based upon false affidavits, obtained a default judgment against her for a consumer debt that the agency knew she did not owe, and had by similar means obtained default judgments against as many as 4,020 other consumers.  The alleged predicate acts of mail and wire fraud included a "dunning letter" and telephone call to the plaintiff from the collection agency's attorney attempting to collect the debt, and the filing of fraudulent affidavits with the court and the county clerk in support of the agency's request for a default judgment.  The District Court, in evaluating whether these allegations were sufficient to state a claim for mail and wire fraud, considered the "significant number of decisions, in this Circuit and other Circuits, which hold, in the context of civil RICO claims based on fraudulent litigation, that a defendant's use of mail and wire to conduct allegedly fraudulent 'litigation activities' is insufficient to establish predicate acts of racketeering."  *Id.* at *7 (citing, *inter alia*, *Pendergraft*, 297 F.3d at 1208; *Gabovitch*, 1995 WL 697319, at

*2; *Curtis*, 758 F. Supp. 2d at 169-70; *Daddona*, 156 F. Supp. 2d at 161-62).  The

court concluded that, even though the plaintiff had alleged that the defendants

engaged in "fraudulent litigation on a much grander scale, in terms of number of

lawsuits, than was present in the cases cited above," dismissal of the RICO claim

was warranted because the "gravamen of the allegations is the same, namely, that

the defendants pursued fraudulent litigation, using fraudulent affidavits and filings,

in an attempt to obtain money or property to which they were not entitled."  *Id.* at

*8.

In an attempt to avoid *Spiegel*, *Mullin*, *Snyder*, and the numerous

other authorities that hold that litigation activities cannot constitute RICO predicate

acts, FTB cites to this Court's decision in *United States v. Eisen*, 974 F.2d 246 (2d

Cir. 1992), for the proposition that litigation conduct may constitute the predicate

RICO acts of mail and wire fraud.  (FTB's Brief at 43).  Although it is not

acknowledged in FTB's brief, attempts to invoke *Eisen* for this purpose have been

rejected by no less than four District Courts within this Circuit, including the court

in *Snyder*.  *See* 2014 WL 317189, at *8-9; *Curtis*, 758 F. Supp. 2d at 175-76;

*Daddona*, 156 F. Supp. 2d at 163-64; *Nakahara*, 1998 WL 35123, at *9; *see also*

*Morrow v. Blessing*, 2004 WL 2223311, at *5 (E.D. Pa. Sept. 20, 2004).[16]  And

---

[16] In *Eisen*, this Court reviewed the RICO convictions of a group of defendants
who participated in a scheme that involved the prosecution of numerous fraudulent

despite FTB's suggestion to the contrary, this Court in *Eisen* did not determine that litigation activities alone are sufficient to qualify as predicate acts under RICO. *See Curtis*, 758 F. Supp. 2d at 175 ("*Eisen* did not reach the issue here regarding whether litigation activities alone can suffice as RICO predicate acts of mail and wire fraud."); *Morrow v. Blessing*, 2004 WL 2223311, at *5 (E.D. Pa. Sept. 20, 2004) ("[T]he issue of whether an attorney can be liable under RICO for actions taken in the course of representation in litigation was never raised [in *Eisen*].") Indeed, the actions of the defendant attorneys in *Eisen* "went well beyond their capacities as legal representatives," including "pressur[ing] accident witnesses to testify falsely that they had witnessed accidents, brib[ing] unfavorable witnesses not to testify and creat[ing] false photographs, documents and physical evidence for use before and during trial." *Morrow*, 2004 WL 2223311, at *5.[17]

In addition to *Eisen*, FTB also relies on a trio of Ninth Circuit decisions where, according to FTB, the court "held that litigation conduct can form

---

personal injury claims, in which, in addition to filing fraudulent lawsuits, they pressured witnesses to change their testimony, bribed witnesses to either testify falsely or not testify, and fabricated physical evidence. These facts are obviously far more egregious, and different in kind, than anything alleged by FTB here.

[17] For the same reasons, *United States v. Lee*, 427 F.3d 881 (11th Cir. 2005), which involved a pair of defendants who, as part of a scheme to obtain property and services by writing numerous checks on closed bank accounts, mailed false documents to counsel for one of the defendants' creditors in a foreclosure proceeding, is also inapposite.

the basis of a mail/wire fraud predicate act of RICO." (FTB's Brief at 43). None of these cases supports FTB's contention. In *United States v. Marbella*, 73 F.3d 1508 (9th Cir. 1996), the issues on appeal were whether (1) the District Court had erred in refusing to give an entrapment instruction, in imposing time limitations on the cross-examination of two government agents, and in excluding certain testimony; and (2) whether the government had produced sufficient evidence to support a conviction for money laundering. *See id.* at 1510. Although the defendants' convictions were based, in part, on their having misrepresented facts in a pre-litigation demand letter, the defendants did not challenge their convictions on this basis, and thus the Ninth Circuit never addressed the issue of whether litigation may constitute mail or wire fraud. *See id.*

In *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353 (9th Cir. 2005), the issue on appeal was whether the District Court had correctly concluded that the defendants were immune from RICO liability based on "federal litigation immunity." *See id.* at 364-65. The Ninth Circuit concluded that the defendants were not immune from liability based on common law principals of immunity, and remanded the case to the District Court for further proceedings. The court did not consider whether the litigation conduct at issue in the case could properly constitute the predicate acts of mail and wire fraud. To the contrary, the court twice made clear in its opinion that it had given no consideration to the

42

merits of the plaintiffs' RICO claims.  *See id.* at 366 ("We express no opinion on the merits of the claims."); *id.* at 373 ("We need not, and do not, reach the merits of any of the issues remanded to the district court.").

FTB also again cites to *Sosa*, 437 F.3d at 923, where the court considered whether a pre-suit demand letter containing an allegedly false statement that the defendant would sue "within 14 days" if its settlement demand was not met could constitute mail or wire fraud in the context of a civil RICO action. Contrary to FTB's suggestion, the court did not conclude that such a letter could support a civil RICO claim.  The court actually asserted that it was "dubious" that the letter "would be actionable under any circumstances," but stated that it "need not reach this question" because it found that the plaintiff had failed to demonstrate that the threat contained in the letter had proximately caused him any injury.  *Id.* at 941.  The court *did not* "hold," as FTB suggests, that misrepresentations contained in a settlement demand letter may give rise to civil liability for mail or wire fraud under RICO.[18]  *See id.*

---

[18] FTB also cites a handful of District Court opinions that – according to FTB – demonstrate that conduct which "falls within the sham litigation exception" also "falls within the reach of the mail and wire fraud statutes."   (FTB's Brief at 45-46).  None of these cases shows that the *Noerr-Pennington* sham exception compels liability under RICO for alleged acts of mail and wire fraud in the context of litigation.  For the reasons shown in Point I.B.3, *supra*, FTB's attempt to use *Noerr-Pennington* to supplant settled case law interpreting federal criminal statutes in the context of RICO must be rejected.

**D.    The Allegations of Travel Act Violations Fail as Predicate Acts**

FTB has alleged violations of the Travel Act, 18 U.S.C. § 1952, as additional predicate acts.  (R. 170-71 ¶¶ 100-102).   The District Court correctly found that the "crimes which FTB alleges the Defendants committed in violation of the Travel Act mirror the extortion, mail fraud, and wire fraud claim" asserted by FTB.  (R. 442).  FTB's allegations fall short of establishing any violation of the Travel Act.  First, the Travel Act only applies to interstate travel or the use of a facility of interstate commerce to further specifically defined "unlawful activity," which does not include mail or wire fraud.  *See* 18 U.S.C. § 1952(b).  Second, since FTB's allegations of extortion are insufficient as a matter of law, so too are its Travel Act claims.  *See Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 578 (S.D.N.Y. 2009); *Kashelkar*, 97 F. Supp. 2d at 393.

## II.    THE DISTRICT COURT PROPERLY DISMISSED FTB'S RICO CONSPIRACY CLAIM BECAUSE THE UNDERLYING RICO CLAIMS ARE INSUFFICIENT AS A MATTER OF LAW

A RICO conspiracy claim fails under § 1962(d) if the underlying RICO claims are themselves deficient.  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 164 (2d Cir. 2004) ("And because Plaintiffs' RICO conspiracy claims are entirely dependent on their substantive RICO claims, we also concur in the District Court's dismissal of the RICO conspiracy claims."); *Nat'l Group for Commc'ns and Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp.

44

2d. 253, 272 (S.D.N.Y. 2006) ("Case law in this Circuit confirms that a 1962(d) conspiracy claim must be dismissed where the substantive RICO claim is deficient.").  As demonstrated above, the District Court correctly concluded that FTB failed to allege predicate RICO acts, and thus properly dismissed FTB's RICO claims.  Having dismissed these claims, the District Court also properly dismissed FTB's RICO conspiracy claims.[19]

---

[19] The District Court denied FTB leave to amend its complaint a second time, noting the futility of any such amendment in overcoming the defects in the Complaint found by the District Court.  (R. 446-47).  FTB does not challenge that ruling in this Court.

## CONCLUSION

For all of the foregoing reasons, FTB's appeal should be dismissed in its entirety.

Dated: New York, New York
August 26, 2014

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP


By:   /s/Mark P. Goodman
      Mark P. Goodman
      Carl Riehl
      919 Third Avenue
      New York, New York 10022
      Tel.:  212-909-6000

*Attorneys for DecisionSorter, LLC,*
*The Hillcrest Group, Inc., Eileen C.*
*Shapiro and Steven J. Mintz*


ALLEGAERT BERGER & VOGEL LLP


By:   /s/David A. Berger
      David A. Berger
      Richard L. Crisona
      111 Broadway, 20th Floor
      New York, New York 10006
      Tel.:  212-571-0550

*Attorneys for Dalton Sentry, LLC*

46

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,258 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: New York, New York
      August 26, 2014

                    ALLEGAERT BERGER & VOGEL LLP

                    By:   /s/David A. Berger
                        David A. Berger
                        Richard L. Crisona
                        111 Broadway, 20th Floor
                        New York, New York 10006
                        Tel.:  212- 571-0550

                        *Attorneys for Dalton Sentry, LLC*

47