RECORD NO.

# 14-1868

In The

# United States Court of Appeals
### For The Second Circuit

## FINDTHEBEST.COM, INC.,

*Plaintiff – Appellant*,

**v.**

## LUMEN VIEW TECHNOLOGY LLC,
## DALTON SENTRY, LLC, DECISIONSORTER, LLC,
## THE HILLCREST GROUP, INC., EILEEN C. SHAPIRO,
## STEVEN J. MINTZ, DOES 1 THROUGH 50,

*Defendants – Appellees*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR SDNY (NEW YORK CITY)

––––––––––––––

## REPLY BRIEF OF APPELLANT

––––––––––––––

Joseph S. Leventhal
THE LEVENTHAL LAW FIRM, APC
655 West Broadway, Suite 840
San Diego, California 92101
(619) 356-3518

*Counsel for Appellant*

THE LEX GROUP ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. ii

I.      INTRODUCTION .......................................................................1

II.     DISCUSSION............................................................................5

      A.      FTB Adequately Pled Extortion Under California Law ......................6

      B.      Defendants Are Not Immune From Liability Under the Hobbs Act, Mail and Wire Fraud Statutes, and the Travel Act Simply Because They Filed Frivolous Lawsuits As Part of Their Extortion Scheme. ...............................................................8

            1.      Wrongful or Fraudulent Conduct Connected to Litigation Can Amount to Extortion, Mail Fraud, and Wire Fraud............9

            2.      FTB Alleges More than the Mere Filing of Lawsuits...............18

            3.      No Policy Supports Blanket Protection For Sham Litigation Activity..................................................21

      C.      FTB Sufficiently Alleged Reliance And Damages ............................23

III.    CONCLUSION............................................................................26

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

i.

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Baisch v. Gallina*,
 346 F.3d 366 (2d Cir. 2003) ...................................................22, 25

*Bridge v. Phx. Bond & Indem. Co.*,
 553 U.S. 639 (2008).......................................................8, 24, 25

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
 404 U.S. 508 (1972)...........................................................15, 17

*Calabrese v. CSC Holdings, Inc.*,
 283 F. Supp. 2d 797 (E.D.N.Y. 2003) ...........................................11

*Chevron Corp. v. Donziger*,
 974 F. Supp. 2d 362 (S.D.N.Y. 2014) ........................................11, 12, 15, 25

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*,
 187 F.3d 229 (2d Cir. 1999) ............................................................5

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*,
 758 F. Supp. 2d 153 (E.D.N.Y. 2010) ...........................................14

*Deck v. Engineered Laminates*,
 349 F.3d 1253 (10th Cir. 2003) ...................................................16

*Gonzalez-Morales v. Hernandez-Arencibia*,
 221 F.3d 45 (1st Cir. 2000)...........................................................13

*Hall Am. Ctr. Assocs. Ltd. P'ship v. Dick*,
 726 F. Supp. 1083 (E.D. Mich. 1989) ...........................................11

*Hecht v. Commerce Clearing House, Inc.*,
 897 F.2d 21 (2d Cir. 1990) ..........................................................25

*I.S. Joseph Co. v. J. Lauritzen A/S*,
    751 F.2d 265 (8th Cir. 1984) ........................................................................16

*In re Nichols*,
    82 Cal. App. 73, 255 P. 244 (1927) ...............................................................6

*Kearney v. Foley & Lardner, LLP*,
    590 F.3d 638 (9th Cir. 2009) ..................................................................13, 15

*Kottle v. Northwest Kidney Ctrs.*,
    146 F.3d 1056 (9th Cir. 1998) ......................................................................15

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*,
    431 F.3d 353 (9th Cir. 2005) ........................................................9, 10, 15, 22

*Lumen View Tech., LLC v. Findthebest.com, Inc.*,
    2014 U.S. Dist. LEXIS 74209 (S.D.N.Y. May 30, 2014) ........................7, 17

*Morrow v. Blessing*,
    2004 U.S. Dist. LEXIS 20318 (E.D. Pa. Sept. 29, 2004) .............................14

*Nakahara v. Bal*,
    1998 U.S. Dist. LEXIS 825 (S.D.N.Y. Jan. 29, 1998) ..................................15

*Otter Tail Power Co. v. United States*,
    410 U.S. 366 (1973)......................................................................................18

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)................................................................................. 21-22

*Schlick v. Penn-Dixie Cement Corp.*,
    507 F.2d 374 (2d Cir. 1974) ........................................................................19

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985)................................................................................22, 25

*Snyder v. United States Equities Corp.*,
    2014 U.S. Dist. LEXIS 10348 (W.D.N.Y. Jan. 27, 2014) ............................14

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ........................................................6, 10, 13, 15

*United States v. Eisen*,
    974 F.2d 246 (2d Cir. 1992) ...................................................................*passim*

*United States v. Hathaway*,
    534 F.2d 386 (1st Cir. 1976)...............................................................8

*United States v. Marbella*,
    73 F.3d 1508 (9th Cir. 1996) ........................................................12

*United States v. Maze*,
    414 U.S. 395 (1974).........................................................................25

*United States v. Nader*,
    542 F.3d 713 (9th Cir. 2008) ...........................................................8

*United States v. Nardello*,
    393 U.S. 286 (1969)..........................................................................8

*United States v. Pendergraft*,
    297 F.3d 1198 (11th Cir. 2002) .............................................15, 16

*United States v. Sturm*,
    870 F.2d 769 (1st Cir. 1989)..........................................................12

*United States v. Tobin*,
    155 F.3d 636 (3d Cir. 1998) ..................................................12, 13

*Von Bulow By Auersperg v. Von Bulow*,
    657 F. Supp. 1134 (S.D.N.Y. 1987) ............................................16

## <u>CONSTITUTIONAL PROVISION</u>

U.S. CONST. amend. I................................................................................2

## <u>STATUTES</u>

18 U.S.C. § 1341 ................................................................................5

18 U.S.C. § 1343 ................................................................................5

18 U.S.C. § 1512 ..............................................................................22

18 U.S.C. § 1951 ................................................................................5

18 U.S.C. § 1952 ................................................................................5

18 U.S.C. § 1961(1) ...........................................................................6

18 U.S.C. § 1961(1)(B) .....................................................................22

## <u>RULE</u>

Fed. R. Civ. P. 11 ..............................................................................4

# I.

## <u>INTRODUCTION</u>

There is no rule in any Circuit Court of the United States that immunizes illegal conduct simply because the wrongdoers file a lawsuit in connection with their actions. Yet Defendants argue, and the District Court agreed, that the RICO pattern and practice alleged in the First Amended Complaint ("FAC") was not actionable because the harm caused to Defendants' 20 or so victims included the filing of a lawsuit.

But there is no such absolute immunity under Federal law and Defendants' brief cites to no authority holding otherwise. Indeed, several Circuit Courts and District Courts have found that wrongful and fraudulent conduct can be the basis of extortion, mail fraud, and wire fraud liability *even if that conduct is related to or involves litigation activity.* Defendants recognize as much when they attempt to distinguish this authority on factual grounds.

Further, Defendants concede that their attempt to extort from Plaintiff FindTheBest.com, Inc. ("FTB") a licensing fee and "pay-off" to Defendants' attorneys through threats of criminal prosecution did not involve litigation activity. Thus, Defendants essentially concede that FTB adequately pled at least one act of extortion. There is no legal basis to draw a bright line between this one attempt to extort a license fee and all others alleged in the FAC. This is especially true here

where the remaining allegations in the FAC demonstrate that Defendants engaged in a scheme to defraud victims that went far beyond the mere filing of frivolous patent infringement lawsuits.

Both the District Court and Defendants ignored the following allegations in the FAC, which amount to far more than mere threats of litigation or simply filing frivolous lawsuits:

(1) Defendants attempted to extort a civil settlement payment and "pay-off" to their attorneys by threatening to pursue meritless criminal charges against Plaintiff's CEO;

(2) Defendants refused to discuss the merits of their infringement claim, with counsel but also directly with FTB, and simply repeated their position that FTB would have to pay "licensing fees" to avoid business disruption and costly litigation;

(3) Defendants knowingly falsified initial disclosures, listing witnesses who either agreed to provide false testimony or lacked any information supporting Defendants' position;

(4) Defendants made misrepresentations to the Court and filed a false declaration in an effort to chill FTB's First Amendment rights and to prevent FTB from repairing damage to its reputation;

(5) Defendants filed numerous copycat lawsuits even though publicly-available information demonstrated that those lawsuits lacked any merit, and Defendants never intended to pursue those lawsuits on the merits;

(6) Defendants created a sham business entity, Lumen View Technology LLC, to give the appearance that they had a legitimate business that was using the '073 Patent, and to hide their involvement in the extortion scheme; and,

(7) Defendants created multiple layers of shell entities and licensed the '073 Patent among these entities to hide exculpatory evidence, insulate themselves from the burdens and expense of litigation, discourage counterclaims, and impede a victim's defense.

These allegations demonstrate that Defendants' patent infringement claims were a farce and just one part of their overall fraudulent scheme to extract "licensing fees" from their victims.

FTB further alleges that all of Defendants' conduct was done, *not for the purpose of pursuing the merits of their frivolous patent infringement lawsuits* (because they knew their victims were not infringing their patent), but to extort "licensing fees" to which they were not entitled. FTB supports this allegation by describing how, in each of the 21 patent infringement lawsuits, Defendants *never even attempted* to pursue the merits of those lawsuits and went to great lengths to

3.

avoid litigating those claims.  Specifically, Defendants granted multiple extensions to their victims; never moved for default when their victims failed to respond to the complaint; reduced settlement demands when their victims demonstrated an intent to answer Defendants' complaint; threatened to disrupt their victims' business or add their victims' customers to their lawsuits; and dismissed lawsuits without prejudice (and without seeking or obtaining an injunction) if Defendants' believed their victims could not pay their "licensing fee."

When a plaintiff files a frivolous lawsuit, there are mechanisms in place to protect the defendant, such as Rule 11 of the Federal Rules of Civil Procedure.  But when a group comes together (i.e., an enterprise), intentionally creates a "shell" party to hide the group, and engages in RICO conduct, that group should not be immune and beyond the reach of our courts and the discovery process simply because part of the RICO conduct included abuse of our legal system.  Defendants' attempt to recast the FAC as one based on the mere filing of frivolous lawsuits is unavailing and inconsistent with the allegations.  As FTB properly pled facts demonstrating that Defendants engaged in a wrongful and fraudulent scheme beyond the mere filing of litigation, it met the required pleading standard.  The District Court erred in dismissing the FAC.

## II.

## <u>DISCUSSION</u>

The parties ask this Court to determine whether FTB sufficiently alleged that Defendants committed the predicate acts of extortion under the Hobbs Act, 18 U.S.C. § 1951, mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, and Travel Act violations under 18 U.S.C. § 1952 to support a civil RICO claim, despite the fact that Defendants filed sham lawsuits as part of their fraudulent scheme.

To defeat the FAC, Defendants have the burden of demonstrating that *as a matter of law*, none of the alleged conduct can support violations of *any* of these statutes.  Simply defeating one of these statutory claims is not fatal to the FAC because FTB alleged multiple acts of extortion, mail fraud, wire fraud, and Travel Act violations as predicate acts to support a RICO claim.[1]  *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999) (To allege a pattern of racketeering activity, FTB must allege "at least two acts of racketeering activity committed in a 10 year period.").

---

[1] Thus, for example, if this Court finds that FTB failed to plead sufficient facts to support extortion under the Hobbs Act, Defendants' multiple acts of mail fraud and/or wire fraud still support a RICO cause of action.  Additionally, Defendants violated the Travel Act when it used the telephone and mail to commit extortion under California and Federal law.

5.

## A.   FTB Adequately Pled Extortion Under California Law.

FTB alleged that Defendants' conduct amounted to extortion under California law, which also serves as a RICO predicate act.  18 U.S.C. § 1961(1) (defining as racketeering activity, "any act or threat involving [inter alia] . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year.").  (JA0264-65.)[2]  Defendants conceded to the District Court that baseless threats of litigation can constitute extortion under California law.  (JA0443 ["Defendants concede that a threat of litigation can constitute an 'unlawful injury to . . . property' under California law if it is objectively baseless"].) *See In re Nichols*, 82 Cal. App. 73, 76, 255 P. 244 (1927); *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006) ("extortion predicated on threat to sue requires allegation that threatened suit was objectively baseless" (citation omitted)).

---

[2] All citations in this brief are to the Joint Appendix ("JA[page]"); docket entries ("Doc. No. [Docket Number], p.[page]"); Appellant's Opening Brief ("AOB, p. [page]"); Respondents' Brief by Dalton Sentry, LLC; Decisionsorter, LLC; The Hillcrest Group, Inc.; Eileen C. Shapiro; and Steven J. Mintz ("Defendants' ROB, p. [page]") or the Respondent's Brief by Lumen View Technology LLC ("Lumen ROB, p. [page]").  Lumen joined in the Respondents' brief filed by the other defendants/appellees.  (Lumen's ROB, p. 9.)  All defendants/appellees are referred to collectively as "Defendants" unless otherwise noted.

In this appeal, Defendants do not challenge FTB's allegations that their lawsuits were objectively unreasonable or "sham litigation."[3]  The District Court also concluded by a preponderance of the evidence in the patent infringement case that "Lumen's lawsuit against FTB was 'frivolous' and 'objectively unreasonable,'" was intended to extract a nuisance settlement from FTB instead of enjoining infringing conduct, and was "***part of a predatory strategy*** aimed at reaping financial advantage from the inability or unwillingness of defendants to engage in litigation against even frivolous patent lawsuits."  *Lumen View Tech., LLC v. Findthebest.com, Inc.* ("*Lumen*"), 2014 U.S. Dist. LEXIS 74209, 14-19 (S.D.N.Y. May 30, 2014) (emphasis added).  Thus, FTB properly alleged at least one predicate act of extortion under California law.[4]

As FTB alleges that Defendants used the mail and wires to carry out this extortion, it also adequately pled the predicate acts of mail fraud, wire fraud, and

---

[3] Defendants essentially acknowledge that FTB properly alleged that their patent infringement lawsuits were "sham litigation" by arguing that their conduct does not amount to extortion or mail/wire fraud even if it relates to sham litigation. (Defendants' ROB, p. 11.)

[4] Contrary to Defendants' contention (Defendants' ROB, p. 17), FTB has not abandoned its California extortion claim and did raise the argument in its opening brief.  (See AOB, p. 14.)  FTB did not argue that point at length because Defendants conceded that the alleged conduct could amount to extortion under California law.  The District Court simply dismissed these allegations because FTB did not plead that California law applied to Defendants' other acts of extortion and, having determined that Defendants' scheme could not amount to violations under Federal law, FTB could not allege a "pattern and practice."  (JA0444.)  However, the "pattern and practice" analysis is not relevant to whether FTB pled a predicate act.

violations of the Travel Act. (JA0170-72.) *United States v. Nardello*, 393 U.S. 286 (1969) (activity by private individuals in attempting to obtain money from victim by threats to expose alleged homosexual activity constituted "extortion" under Travel Act); *United States v. Nader*, 542 F.3d 713, 720 (9th Cir. 2008) (telephone is "facility in interstate commerce" and, thus, use of telephone to further unlawful activity violates Travel Act); *United States v. Hathaway*, 534 F.2d 386, 398 (1st Cir. 1976) (use of mail to carry out bribery and extortion amounted to violation of Travel Act); *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) ("The gravamen of [a mail or wire fraud] offense is the scheme to defraud, and any 'mailing that is incident to an essential part of the scheme satisfies the mailing element,' even if the mailing itself 'contains no false information.'").

## B. Defendants Are Not Immune From Liability Under the Hobbs Act, Mail and Wire Fraud Statutes, and the Travel Act Simply Because They Filed Frivolous Lawsuits As Part of Their Extortion Scheme.

Defendants concede (as they must) that the inquiry for this Court is whether the conduct alleged by FTB meets the federal statutory requirements for violations of the Hobbs Act, mail/wire fraud statutes, and the Travel Act. (Defendants' ROB, p. 19.) Yet, they nonetheless urge this Court to make a bright-line rule that meritless litigation and related activities can never *as a matter of law* amount to violations of these statutes without considering whether FTB sufficiently alleged that Defendants' conduct amounts to "wrongful conduct" within the meaning of

the Hobbs Act or a scheme to defraud within the meaning of the mail and wire fraud statutes. (Defendants' ROB, p. 11.) The Court should decline Defendants' invitation for such a bright-line rule.

### 1. *Wrongful or Fraudulent Conduct Connected to Litigation Can Amount to Extortion, Mail Fraud, and Wire Fraud.*

Although Defendants claim there is a "general rule" that meritless litigation and related conduct cannot be the basis of RICO liability, they cite no authority for this broad proposition. (*Id.* at 19.) Further, Defendants offer no explanation for why wrongful and fraudulent conduct should be afforded absolute immunity simply because a defendant also files sham litigation. The Ninth Circuit expressly rejected such argument:

> Plaintiffs allege that DuPont's RICO liability is predicated on its falsification, destruction, and misrepresentation of evidence. DuPont has not cited any federal case which holds that a party's litigation conduct in a prior case is entitled to absolute immunity and cannot form the basis of a subsequent federal civil RICO claim. In fact, the RICO statute, itself, provides that conduct relating to prior litigation may constitute racketeering activity. 18 U.S.C. § 1961(1)(B) (defining racketeering activity as including an act indictable under 18 U.S.C. § 1512, which relates to tampering with a witness, victim, or informant). **Therefore, the district court erroneously determined that Plaintiffs' "RICO claims, which are based on immune litigation conduct, fail as a matter of law."**

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.* ("*Living Designs*"), 431 F.3d 353, 364-65 (9th Cir. 2005) (emphasis added, internal citation omitted).

*Living Designs* is directly on point, holding that the district court erred in dismissing Plaintiffs' RICO claim predicated on mail fraud and wire fraud because those claims were based on defendant's falsification, destruction, and misrepresentation of evidence in a prior litigation between the parties. *Id.* at 364. In so doing, the Ninth Circuit rejected the defendant's contention that there was immunity for litigation conduct that would preclude RICO liability based on the predicate acts of mail and wire fraud as a matter of law. *Id.* at 365.

Defendants' attempt to distinguish *Living Designs* because it did not decide the merits of the RICO claim is unavailing and lacks an understanding of the procedural posture of the case. (Defendants' ROB, pp. 42-43.) *Living Designs* was an appeal from a judgment on the pleadings and (like this case) only raised the question of whether the plaintiff could *plead* a RICO claim based on litigation conduct. *Id.* at 366.

In its later decision in *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006), the Ninth Circuit once again confirmed that litigation conduct could amount to mail fraud:

> Indeed, in *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005), we permitted the plaintiffs to maintain a RICO suit predicated on fraudulent discovery conduct in prior litigation that induced the plaintiffs to settle the suit for a lower amount than they would have in the absence of the fraud. *Id.* at 365. The defendants had failed during the prior litigation to disclose damaging evidence which was

10.

solely in their possession and had falsely claimed that the evidence did not exist. *Id.* at 356-58. **We concluded that such conduct could amount to mail fraud, notwithstanding its connection to a legal proceeding.**

Thus, there is no absolute rule that conduct related to litigation is immune from liability even if it amounts to fraudulent and wrongful conduct.

Defendants' argument that such conduct cannot be extortion, mail fraud, or wire fraud as a matter of law is also disingenuous given that their brief acknowledges several cases that imposed liability for such conduct even when it is related to litigation. (Defendants' ROB, p. 22, n. 8 [recognizing that *Chevron Corp. v. Donziger* ("*Chevron*"), 974 F. Supp. 2d 362 (S.D.N.Y. 2014) found defendants committed extortion through a multi-faceted, extortionate scheme *that included bringing frivolous litigation*], p. 25, n. 11 [citing *Calabrese v. CSC Holdings, Inc.*, 283 F. Supp. 2d 797, 809-10 (E.D.N.Y. 2003) (RICO claim stated based on predicate act of extortion where plaintiff alleged defendants engaged in scheme of filing frivolous lawsuits to extort money); *Hall Am. Ctr. Assocs. Ltd. P'ship v. Dick*, 726 F. Supp. 1083, 1097 (E.D. Mich. 1989) ("The allegations in this case go further than the simple threat to sue…. In addition, the 1989 First Circuit case of *Sturm* supports the plaintiffs' position, as do the literal elements of the Hobbs Act.")], p. 41, n. 16 [discussing *United States v. Eisen*, 974 F.2d 246, 251 (2d Cir. 1992)].)

Moreover, in their attempt to distinguish those cases, Defendants recognize that some conduct, even if committed under the guise of pursuing litigation, can be so outside the norm that it amounts to wrongful and fraudulent conduct. For example, Defendants acknowledge that in *Eisen*, 974 F.2d at 251, the defendants' conduct in prosecuting fraudulent personal injury lawsuits was sufficiently "egregious" to support a criminal RICO conviction based on wire fraud. (Defendants' ROB, pp. 40-41, n. 16.) They also acknowledge that in *Chevron*, 974 F. Supp. 2d at 581, the defendants' conduct in pursuing litigation was sufficiently wrongful under the Hobbs Act and supported a judgment of civil RICO liability. (*Id.*, p. 22, n. 8; *see also* p. 42 [recognizing that the extortion conviction in *United States v. Tobin*, 155 F.3d 636, 639 (3d Cir. 1998) was based in part on defendant's threats to file baseless lawsuits and the mail fraud conviction in *United States v. Marbella*, 73 F.3d 1508 (9th Cir. 1996) was based in part on settlement demand containing false medical claims].)

As set forth in further detail in FTB's opening brief, several Circuit Courts have found that wrongful or fraudulent conduct can support extortion, mail fraud, and wire fraud claims even if that conduct involves filing a lawsuit. *Eisen*, 974 F.2d at 251 (affirming the criminal RICO convictions of seven attorneys and staff of a law firm based upon their "conduct with regard to 18 fraudulent personal injury lawsuits"); *United States v. Sturm*, 870 F.2d 769, 774 (1st Cir. 1989) (threat

of litigation to obtain property could amount to extortion if the party knowingly had no claim of right to that property); *Tobin*, 155 F.3d at 639 (affirming a criminal extortion conviction that was based in part on threats to file frivolous lawsuits and report victim to the IRS); *Sosa*, 437 F.3d at 939-40 (conduct in prior litigation can support a RICO suit if the conduct falls within the sham litigation exception); *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 647 (9th Cir. 2009) (RICO claim based on defendants' sham litigation); *see Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 51-52 (1st Cir. 2000) ("we will assume that the filing of frivolous suits may constitute RICO extortion in some instances").

These cases recognize that a defendant cannot immunize its wrongful conduct simply because it also files a sham lawsuit. For example, in *Eisen*, all of the defendants' conduct was done for the purpose of winning or forcing settlement of frivolous personal injury lawsuits:

> The evidence at trial established that the defendants conducted the affairs of the Eisen law firm through a pattern of mail fraud and witness bribery by pursuing counterfeit claims and using false witnesses in personal injury trials, and that the Eisen firm earned millions in contingency fees from personal injury suits involving fraud or bribery.

*Eisen*, 974 F.2d at 251. Thus, the conduct at issue was *entirely related* to litigation. But the methods the Eisen Firm used in pursuing that litigation were wrongful, taking them outside the realm of "normal litigation activities," and

amounting to an extensive and broader scheme to defraud defendants in the

personal injury lawsuits:

> The methods by which the frauds were accomplished included pressuring accident witnesses to testify falsely, paying individuals to testify falsely that they had witnessed accidents, paying unfavorable witnesses not to testify, and creating false photographs, documents, and physical evidence of accidents for use before and during trial. The Government's proof included the testimony of numerous Eisen firm attorneys and employees as well as Eisen firm clients, defense attorneys, and witnesses involved in the fraudulent personal injury suits. Transcripts, correspondence, and trial exhibits from the fraudulent personal injury suits were also introduced.

*Id*. Thus, the *Eisen* defendants' conduct in furtherance of their fraudulent scheme

was not immunized simply because they committed those acts in furtherance of

their frivolous lawsuits.[5]

---

[5] Defendants' suggestion that District Court decisions, most of which are unpublished, can cast doubt on *Eisen* is baseless. (Defendants' ROB, p. 40.) Those cases did not purport to overrule or reject *Eisen*, but simply distinguished *Eisen* on the facts using a rationale consistent with FTB's position in this appeal. *Snyder v. United States Equities Corp.*, 2014 U.S. Dist. LEXIS 10348, 28-29 (W.D.N.Y. Jan. 27, 2014) ("Unlike Eisen, there is no claim here that the underlying litigation . . . is part of any larger scheme to deprive Daddona of his property."); *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 175-76 (E.D.N.Y. 2010) ("the facts of *Eisen* are plainly distinguishable from the facts here and therefore provide no support for plaintiffs' position"); *Morrow v. Blessing*, 2004 U.S. Dist. LEXIS 20318 (E.D. Pa. Sept. 29, 2004) ("Again, the issue of whether an attorney can be liable under RICO for actions taken in the course of representation in litigation was never raised. Additionally, the actions of the attorney defendants in *Eisen*, like the attorneys in *Makris*, went well beyond their capacities as legal representatives. The attorneys in *Eisen* allegedly pressured accident witnesses to testify falsely that they had

The Ninth Circuit made a similar distinction in *Kearney*, 590 F.3d at 647 where it reversed the district court's dismissal of plaintiff's RICO claims that were based on defendants' misrepresentations and suppression of evidence in a prior lawsuit. The Ninth Circuit explained that the "sham litigation conduct" alleged by plaintiff was similar to that alleged in *Living Designs* and the conduct in both cases "amounted to a 'knowing fraud . . . upon the court depriv[ing] the litigation of its legitimacy.'" *Id.* (quoting *Sosa*, 437 F.3d at 940). In doing so, the Ninth Circuit recognized that, while the filing of litigation is not *inherently* wrongful, sham litigation and litigation pursued through improper means can be deemed wrongful and fraudulent.[6] *See also Chevron*, 974 F. Supp. at 581 ("bribes (in any context)

---

witnessed accidents, bribed unfavorable witnesses not to testify and created false photographs, documents and physical evidence for use before and during trial."); *Nakahara v. Bal*, 1998 U.S. Dist. LEXIS 825, 30-32 (S.D.N.Y. Jan. 29, 1998) ("The *Eisen* holding nevertheless is not controlling here, given the fundamentally different factual contexts of the two cases.")

[6] In this respect, the sham exception to the *Noerr-Pennington* doctrine somewhat overlaps with the analysis of whether Defendants' conduct is "wrongful" within the meaning of the Hobbs Act. As Defendants correctly point out, the filing of lawsuits is not "inherently" wrongful. (Defendants' ROB, p. 13 [quoting *United States v. Pendergraft*, 297 F.3d 1198, 1206-07 (11th Cir. 2002)].) The systematic filing of frivolous lawsuits or sham litigation conduct, however, is not legitimate conduct entitled to any immunity and is wrongful and/or fraudulent. *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972); *accord Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998) ("A 'sham' situation involves a defendant whose activities are not genuinely aimed at procuring favorable government action at all, not one who genuinely seeks to achieve his governmental result, but does so through **improper means**.") (emphasis added).

15.

and misrepresentation (in the adjudicatory process), are not normal and legitimate exercises of the right to petition.").

The authority on which Defendants rely adds nothing to the debate, as they leave open the question of whether litigation conduct that is part of a more extensive scheme of extortion can be the basis of liability under the Hobbs Act and mail and wire fraud statutes. *Von Bulow By Auersperg v. Von Bulow*, 657 F. Supp. 1134 (S.D.N.Y. 1987) ("the Court need not address the situation where allegedly unjustified suits form a part of some more extensive scheme of racketeering activity, such as extortion"); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1257 (10th Cir. 2003) (single lawsuit was not extortion); *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) ("our holding is a narrow one" that a single "threat to file litigation against Marion County" was not extortion under the Hobbs Act); *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir. 1984) (declining to "hold that two threats to file a civil action [against the same plaintiff], or, as one theory asserted in the complaint would have it, one threat to file a civil action and one instance of travel for the purpose of making such a threat, constituted a 'pattern of racketeering activity'").

Those cases involve a mere filing of one frivolous lawsuit or a threat to file a frivolous lawsuit, facts remarkably different than those in this case where Defendants not only filed a series of frivolous lawsuits but also created a complex

scheme to extort money from their victims that included threats of criminal prosecution, creating shell entities and making threats unrelated to the merits of their lawsuits to extort fees from their victims and prevent or discourage victims from actually litigating those claims. Defendants' conduct here was much more akin to that in *Eisen* than Defendants admit. Indeed, the District Court found in its exceptional case ruling:

> The boilerplate nature of Lumen's complaint, the absence of any reasonable pre-suit investigation, and the number of substantially similar lawsuits filed within a short time frame, **suggests that Lumen's instigation of baseless litigation is not isolated to this instance, but is instead part of a predatory strategy aimed at reaping financial advantage** from the inability or unwillingness of defendants to engage in litigation against even frivolous patent lawsuits.

*Lumen*, 2014 U.S. Dist. LEXIS 74209 at 17.[7]  Thus, Defendants' conduct went well beyond the norms of litigation. As the Supreme Court opined in *Cal. Motor Transp. Co.*, 404 U.S. at 513, systematically filing frivolous lawsuits can be wrongful:

> One claim, which a court or agency may think baseless, may go unnoticed; but a pattern of baseless, repetitive claims may emerge which leads the factfinder to conclude that the administrative and judicial processes have been abused. That may be a difficult line to discern and draw. But once it is drawn, the case is established that abuse of those processes produced an ***illegal result***,

---

[7] Lumen View's patent infringement case was deemed a "related case." (JA0102.)

*viz.*, effectively barring respondents from access to the agencies and courts.  (emph. added).

*See also Otter Tail Power Co. v. United States*, 410 U.S. 366, 380 (1973) (*Noerr-Pennington* affords no protection for "repetitive lawsuits carrying the hallmark of insubstantial claims").

Accordingly, Defendants go too far in urging this Court to hold that their extortion scheme cannot, *as a matter of law*, amount to extortion, mail fraud, or wire fraud simply because they filed frivolous lawsuits as part of that scheme.

### 2.    *FTB Alleges More than the Mere Filing of Lawsuits.*

The crux of FTB's case against Defendants is that they created an extortion scheme to defraud victims based on their purported ownership of the '073 Patent and other patents.[8]  In creating this scheme, Defendants did much more than knowingly file 21 frivolous patent infringement lawsuits.  They formed various shell entities and licensed the patent among these shells (using the mail and wires) to attempt to insulate themselves from liability (so far, effectively), conceal Shapiro and Mintz's role in the scheme, hide exculpatory evidence their victims could use to defend themselves, create the appearance that Lumen View was a

---

[8] While Lumen View was the entity Shapiro and Mintz used to extort fees based on the '073 Patent, FTB also alleged that Shapiro and Mintz used other shell entities such as Blackstone River, LLC, NewsGems LLC, Gooseberry Natural Resources LLC, Vertigo Holdings LLC, and Kolomoki Mounds LLC to bring frivolous patent infringement lawsuits based on at least three other patents over the last three to four years.  (JA0156.)

legitimate business using the '073 Patent, and discourage their victims from fighting their claims or launching a defense to their claims. (JA0118-19.)

Defendants used threats that were external to the litigation (carried out by mail and wire) to persuade its victims to pay them "licensing fees." For example, Defendants threatened to criminally prosecute FTB's CEO if FTB did not pay a licensing fee and compensate its attorney. (JA0259.) Defendants concede that this threat was unrelated to the litigation. (Defendants' ROB, p. 11, n 5.) FTB alleges that Defendants made similar threats to other victims, however, as it was Defendants' standard practice to force their victims to sign non-disclosure agreements, much of this evidence is unreachable absent a subpoena. *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974) (the rule requiring plaintiff to plead fraud with particularity may be relaxed as to matters peculiarly within the opposing party's knowledge). Defendants also made threats to disrupt their victim's business that went beyond typical document preservation requests, but threatened to confiscate key employees' computers and to contact their victims' customers. (JA0250.)

Defendants trumped up false witnesses to support their frivolous patent infringement claim against FTB – naming only one individual in its initial disclosure who had no knowledge of the facts of the case, and later adding Shapiro and Mintz only for the purpose of preventing FTB from contacting them.

19.

(JA0260.)   To further intimidate FTB, distract FTB from defending the patent infringement action, increase litigation expenses, and prevent FTB from taking steps to repair damage to its reputation, Defendants filed a meritless motion with a false declaration, which was filed by means of wire communications in interstate commerce.  (JA0261)

FTB also alleged facts demonstrating that Defendants never intended or in fact pursued their patent infringement litigation.  Thus, all conduct by Defendants was done not for the purpose of prosecuting that lawsuit, but to extort licensing fees from their victims in accordance with their fraudulent scheme.  FTB describes how Defendants refused to discuss the merits of the lawsuit with FTB and could not even describe the alleged product they believed was infringing upon the patent. (JA0164-65.)   Defendants went to great lengths to avoid litigating any of their infringement cases by providing targets with multiple extensions, and lowering settlement demands as a "last ditch" effort to prevent a target from filing an answer or litigating on the merits.  (JA0154-55.)  Defendants never defaulted a victim who failed to timely respond to their complaint, never sought an injunction to prevent infringing conduct, and dismissed lawsuits without prejudice if they believed their victims could not pay the licensing fee.   (JA0126, 29, 33-37 [giving explicit examples – case and date – of such conduct].)  Importantly, FTB was able to plead detailed facts of Defendants' extortion scheme without the benefit of discovery,

which will undoubtedly uncover more evidence to support FTB's allegations and reveal additional predicate acts.  (JA0106 [the District Court stayed discovery within weeks of when FTB filed its initial complaint].)

Accordingly, FTB sufficiently alleged facts demonstrating that Defendants created and carried out an elaborate extortion scheme that involved much more than the filing of frivolous lawsuits.

### 3.    *No Policy Supports Blanket Protection For Sham Litigation Activity.*

Defendant Lumen View argues that policy reasons support dismissal of FTB's claims, quoting the District Court's statement that allowing RICO liability based on the "instigation of meritless litigation" would "give complainants unprecedented access to federal courts and the treble damage remedy," and "risks chilling parties' resort to the judicial system to resolve their disputes."  (Lumen ROB, p. 12 [citing the District Court's ruling at JA0436].)   But policy considerations favor reviving FTB's claims and allowing FTB to conduct discovery into the RICO conduct by defendants.

Defendants are only one example of parties abusing our patent and legal system to extract "licensing" fees that are meritless.  There is no policy reason to open the courthouse doors to Defendants, with egregious conduct as alleged here, and shut those same doors to Plaintiff.  The *Noerr-Pennington* doctrine sufficiently protects any meritless litigation pursued in good faith.  *Prof'l Real Estate*

*Investors, Inc. v. Columbia Pictures Indus., Inc.* ("*Prof'l Real Estate*"), 508 U.S. 49, 60 (1993) (the doctrine protects a litigant's right to seek redress in the courts but does not protect "sham litigation" that is objectively baseless and brought without a subjective expectation of success). This doctrine, along with the "pattern and practice" requirements of a RICO claim, assures that only claims based on a repetitive filing of frivolous lawsuits or similarly egregious conduct would be actionable.

Adopting the rule proposed by Lumen View yields a lopsided result, immunizing illegal and fraudulent conduct simply because a defendant also filed a sham lawsuit, while leaving the victim of that conduct without recourse in our courts. There is no broad federal immunity requiring such a rule, and nothing in the RICO statute suggests that it meant to exempt litigation conduct from its reach. To the contrary, "the RICO statute, itself, provides that conduct relating to prior litigation may constitute racketeering activity." *Living Designs*, 431 F.3d at 364-65 (18 U.S.C. § 1961(1)(B) defines racketeering activity as including an act indictable under 18 U.S.C. § 1512, which relates to tampering with a witness, victim, or informant). Furthermore, "[t]he Supreme Court has advised that 'RICO is to be read broadly.'" *Baisch v. Gallina*, 346 F.3d 366, 372 (2d Cir. 2003), *quoting Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Affording wrongful and illegal conduct immunity from the RICO statute simply because it

22.

involves filing a frivolous lawsuit would limit the reach of the RICO statute and would run afoul of the Supreme Court's direction.

## C.    **FTB Sufficiently Alleged Reliance And Damages.**

In arguing that FTB failed to properly allege reliance on, and damages from, Defendants' mail and wire fraud, Defendants once again ignore the specific allegations in the FAC and cite only (as the District Court did) to paragraph 99 of the FAC.  (Defendants' ROB, p. 31.)  Thus, like the District Court, Defendants overlooked paragraph 105 of the FAC describing the specific damages caused by Defendants' mail and wire fraud:

> The injuries to FTB caused by reason of the violations of 18 U.S.C. § 1962(c) include, but are not limited to, damage to FTB's reputation and goodwill, disruption to FTB's business, travel expenses, legal fees and costs in defending itself from Defendants' objectively baseless, improperly motivated, sham patent lawsuit and threats of criminal prosecution.  Among other things, ***FTB's executives have devoted approximately 500 hours of their time*** investigating Defendants' frivolous claims of patent infringement and criminal conduct, taking steps to repair FTB's reputation and goodwill that was damaged as a result of Defendants' conduct, defending and responding to demands Defendants made in connection with its claims, and quieting concerns regarding Defendants' claims.  Additionally, ***FTB has spent three hours in "all company meetings" to address its employees' concerns regarding Defendants' claims, which total approximately 300 hours.***  FTB's engineers have also devoted significant time to investigating, defending, and responding to Defendants' frivolous claims.  All these efforts have diverted significant resources from the operation of FTB's business, which

> was Defendants' purpose and intent, hindering the time FTB's executives and engineers can devote to developing products and services to compete in a highly competitive industry. Moreover, as FTB is a "start-up" company (as are most of Defendants' targets) Defendants' assault comes at a particularly crucial time where any diversion of the company's economic and human capital is critical to the company's success. ***All in, this diversion of resources has cost FTB in excess of tens of thousands of dollars.***

(JA0171 (emph. added); *see also* JA0166 [¶79], 179 [¶111].)

These allegations are sufficient to demonstrate (at the pleading stage) that FTB relied on Defendants' misrepresentations and were harmed by their extortion scheme. Further, while FTB was not required to plead reliance as an element of mail and wire fraud, it alleged reliance on Defendants' misrepresentations and fraud to FTB's detriment. (*Bridge*, 553 U.S. at 648 ("Using the mail to execute or attempt to execute a scheme to defraud is indictable as mail fraud, and hence a predicate act of racketeering under RICO, **even if no one relied on any misrepresentation**." (emph. added).) Moreover, although FTB pled damages as a result of its reliance on Defendants' misrepresentations, it is required only to allege damages resulting from Defendants' entire fraudulent scheme, not any one specific false representation. This is because:

The gravamen of [a mail or wire fraud] offense is the scheme to defraud, and any mailing that is incident to an essential part of the scheme satisfies the mailing element, *even if the mailing itself "contains no false information.*[9]

*Bridge*, 553 U.S. at 647(emph. added, internal quotations and citations omitted); *accord United States v. Maze*, 414 U.S. 395, 400 (1974) ("mails need only be "for the purpose of executing" the scheme); *Chevron*, 974 F. Supp. 2d at 588 (applying law to wire fraud). A plaintiff meets the RICO "but-for" and "proximate cause" requirement by pleading an injury flowing from the pattern of racketeering activity (*e.g.* Defendants' extortion scheme). *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990) ("the [RICO] injury must be caused by a pattern of racketeering activity violating section 1962 or by individual RICO predicate acts"), *citing Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *accord Baisch*, 346 F.3d at 373 (plaintiff pled causation where it alleged it was injured by defendants' pattern of racketeering activity). Defendants' concede that FTB was injured as a result of their extortion scheme. (*See* Defendants' ROB, p. 33.)

Accordingly, the District Court erred in finding FTB failed to properly plead reliance on Defendants' mail and wire fraud.

---

[9] Defendants narrowly interpret FTB's complaint to allege mail fraud based only on the false statements made in the patent litigation (Defendants' ROB, p. 31), overlooking that they used the mail and wires to form shell entities, license the patent among them, and deliver threats of criminal prosecution – all of which was done in furtherance of their fraudulent scheme.

## III.

## <u>CONCLUSION</u>

For the foregoing reasons, as well as those set forth in FTB's opening brief, the District Court erred in dismissing FTB's RICO claims. FTB sufficiently alleged that Defendants engaged in a pattern and practice of extortion, mail fraud, wire fraud, and violations of the Travel Act to support its RICO claim.

Dated:        September 11, 2014

Respectfully submitted,

By:   /s/ Joseph S. Leventhal

JOSEPH S. LEVENTHAL
THE LEVENTHAL LAW FIRM, APC
655 West Broadway, Suite 840
San Diego, CA 92101
Ph: (619) 356-3518
Fx: (619) 615-2082
jleventhal@leventhallaw.com

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 11th day of September, 2014, I caused this Reply

Brief of Appellant to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

Stamatios Stamoulis
STAMOULIS & WEINBLATT
2 Fox Pointe Centre
6 Denny Road, Suite 307
Wilmington, Delaware  19809
(302) 999-1540

*Counsel for Appellee Lumen Technology LLC*

David A. Berger
Richard L. Crisona
ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York  10006
(212) 571-0550

*Counsel for Appellee Dalton Sentry*, *LLC*

Mark P. Goodman
Carl W. Riehl
DEBEVOISE & PLIMPTON LLP
919 3rd Avenue
New York, New York  10022
(212) 909-6000

*Counsel for Appellees Decisionsorter*, *LLC,*
  *The Hillcrest Group*, *Inc.*, *Eileen C. Shapiro*, *Steven J. Mintz,*

I further certify that on this 11th of September, 2014, I caused the required number of bound copies of the Reply Brief of Appellant to be filed with the Clerk of the Court via UPS Next Day Air.

/s/ Joseph S. Leventhal

*Counsel for Appellant*

<u>**CERTIFICATE OF COMPLIANCE**</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*6,242*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: <u>September 11, 2014</u>          <u>/s/ Joseph S. Leventhal          </u>
                                              *Counsel for Appellant*